UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
LOCAL 100, TRANSPORT WORKERS          :
UNION, AFL-CIO; ROGER TOUSSAINT,
as President of Local 100,            :
Transport Workers Union,
AFL-CIO; and WAYNE BRYAN,             :

          Plaintiffs,         :          **COMPLAINT**

      -against-                   :
                        06 Cv 4787
BERNARD ROSEN, MARGARET CONNOR,       :          (RPP)
MARK PAGE, MARGE HENNING and
SUSAN KUPFERMAN, as Employer          :
Trustees of the T.W.U.-New York
City Private Bus Lines Pension        :
Trust,
                        :
         Defendants.         :

----------------------------------X

## PRELIMINARY STATEMENT

    1.  Plaintiffs bring this action for a declaratory judgment

that a deadlock arbitration commenced by defendants, the Employer

Trustees of the T.W.U.-New York City Private Bus Lines Pension

Trust ("the Trust"), violates the Labor Management Relations Act

of 1947 ("LMRA" or "the Taft-Hartley Act"), 29 U.S.C. §141, et

seq. and the Employee Retirement Income Security Act of 1974, as

amended ("ERISA"), 29 U.S.C. §1001, et seq. and for an injunction

permanently barring defendants from continuing with said

arbitration.  Defendants seek, through said arbitration, to merge

one of the Trust's pension plans ("the Plans") with a pension

plan maintained by the Metropolitan Transportation Authority

("MTA").

## JURISDICTION

2.   Jurisdiction of the Court over the claims of plaintiffs Local 100, Transport Workers Union, AFL-CIO's ("Local 100" or "the Union") and Roger Toussaint ("Toussaint")is invoked pursuant to Section 302(e) of the LMRA, 29 U.S.C. §186(e); the Declaratory Judgment Act, 28 U.S.C. §2201, et seq. and 28 U.S.C. §1331.

3.   Jurisdiction of the Court over the claim of plaintiff Wayne Bryan is invoked pursuant to Section 502(e) of ERISA, 29 U.S.C. §1132(e); the Declaratory Judgment Act, 28 U.S.C. §2201, et seq. and 28 U.S.C. §1331.

## VENUE

4.   As the Union has its principal place of business and the Plans are administered within the Southern District of New York, venue is proper within this district pursuant to Section 301(c) of the LMRA, 29 U.S.C. §185(c) and Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

## PARTIES

5.   Plaintiff Local 100 is a "Labor Organization" within the meaning Section 2(5)of the Labor Management Relations Act of 1947, 29 U.S.C. §152(5) ("the LMRA" or "the Taft Hartley Act").

6.   Plaintiff Roger Toussaint is the President of Local 100.

7.   Plaintiff Wayne Bryan is a Staff Representative of Local 100 and is a participant in the Plans.

8.   Defendants, Bernard Rosen, Margaret Connor, Mark Page, Marge Henning and Susan Kupferman are the Employer Trustees of

the Trust.   The trustees are appointed pursuant to the terms of a
Second Restated Trust Agreement, effective January 1, 1999.   A
copy of the Trust Agreement is annexed hereto as Exhibit "A".
The administration of the Trust is governed by the terms of the
Trust Agreement and by Section 302(c)(5) of the LMRA, 29 U.S.C.
§186(c)(5).

### STATEMENT OF FACTS

9.   Local 100 represents public and private sector employees
in the transportation and related industries, including, until
2006, a bargaining unit composed of employees of certain private
bus companies operating within the City of New York.

10.   Pursuant to collective bargaining, the Union and the
private bus companies established the Trust by a Trust Agreement
dated November 23, 1963, which was subsequently amended effective
January 1, 1976 and January 1, 1999. The Trust maintains two
Plans, one of which is a multiemployer defined benefit pension
plan within the meaning of Section 3(37) of the Employee
Retirement Income Security Act of 1974, as amended, 29 U.S.C.
§1002(37).   The other is a defined contribution plan maintained
pursuant to Section 401(k) of the Internal Revenue Code of 1986,
as amended.

11.   Under the terms of the Trust Agreement and as required
by the LMRA, the Trust is administered by a board of trustees
composed of an equal number of trustees appointed by the Union
and by the contributing employers to the Trust.   The Trust

agreement provides for five trustees appointed by the
contributing employer and five trustees appointed by the union.
The Trust's trustees are "fiduciaries" within the meaning of
Section 3(21) of ERISA, 29 U.S.C. §1002(21).

12. The Trust Agreement provides a procedure, at Article 3,
Section 3.7(5), for arbitration of "a deadlock upon any question
coming before the Trustees for decision or resolution...."

13. Article 4 of the Trust Agreement sets forth the powers
granted to the trustees and the limitations on such power.  Under
Article 4, the trustees may only use the assets attributable to
each plan to pay plan benefits and the reasonable expenses of
administering that plan.  Article 4 also empowers the trustees to
take certain actions necessary for the day-to-day administration
of the Trust and the Plans.  Neither Article 4 or any other
provision of the Trust Agreement, however, confers power on the
trustees to merge the Trust or the Plans with any other trust
fund or plans.

14. In or about December of 2002, the City of New York
announced its intention to revoke the authority of the private
bus companies to operate on New York City streets and either to
take over the routes and operations of the private bus companies
or transfer them to the MTA.

15. Upon information and belief, between February of 2005
and February 27, 2006, the City of New York and the MTA completed
negotiations with the private bus companies to take over the

routes and operations of each of the companies.

16.    Local 100 continues to represent for collective bargaining those employees of the MTA who were employed by the private bus companies prior to the MTA's take-over of the routes and operations of said companies.

17.    Each of the private bus companies ceased, as of the date of its take-over by the MTA, to have an obligation to contribute to the Trust on behalf of the Local 100 members whose jobs had been transferred to the MTA.  As a result of the cessation of the obligation to contribute to the Trust, each of the private bus companies withdrew from the defined benefit pension plan within the meaning of Section 4203 of ERISA, 29 U.S.C. §1383.

18.    The cessation of the contribution obligation of all contributing employers to the Trust constituted a mass withdrawal from the defined benefit pension plan, within the meaning of 29 C.F.R. §1001.2.  Pursuant to Section 4041A of ERISA, 29 U.S.C §1341a, said mass withdrawal resulted in the termination of the Trust's defined benefit pension plan.

19.    Notwithstanding the termination of the defined benefit plan, the trustees remain obligated to administer the Trust and the Plans in accordance with the Trust Agreement, the LMRA and ERISA.

20.    Upon information and belief, on or about January 30, 2006, the Employer Trustees of the Trust, Jerome Cooper, Thomas

Elkins, Stephen Eager, Thomas Eager, and Doris Drantch, who had been appointed by the private bus companies, resigned and appointed in their stead, Bernard Rosten, Margaret Connor, Mark Page, Marge Henning and Susan Kupferman as Employer Trustees of the Trust.

21.  On or about March 2, 2006, at a meeting of the Board of Trustees of the Trust, the new Employer Trustees proposed a resolution that the Trust's defined benefit pension plan be merged into the MTA Defined Benefit Pension Plan ("the MTA Plan").  Upon information and belief, all five Employer Trustees voted in favor of the resolution and all five Union Trustees voted against the resolution, which resulted in a deadlock on the resolution.

22.  By letter dated March 3, 2006, Mark E. Brossman, counsel for the Trust appointed by the Employer Trustees, submitted the deadlock reference in paragraph 16 to arbitration before Jacquelin F. Drucker, purportedly in accordance with Section 3.7(5) of the Trust Agreement, as amended.

23.  On or about May 15, 2006, Arbitrator Drucker held a first day of hearing regarding the deadlock referenced in paragraph 16 in which both the Union Trustees and the Employer Trustees participated.

**AS AND FOR A FIRST CLAIM BY PLAINTIFFS LOCAL 100 AND TOUSSAINT**

24.  Plaintiffs Local 100 and Toussaint repeat and reallege the allegations of paragraphs "1" through "23" of this Complaint

as if set forth at length herein.

25.  Because the Trust Agreement does no confer on the trustees the power to merge the Trust's plans with any other plan, the trustees are without power to effectuate a merger of the Trust's defined benefit plan with another plan.  In the absence of such power being delegated to the trustees, the power to merge the Trust's plans with other plans is reserved to the Trust's settlors, the collective bargaining parties.

26.  Because the trustees are without power or authorization to effectuate a merger, the deadlock arbitrator, who stands in the place of the trustees in a deadlock arbitration, is without power or authorization to decide whether the Trust's defined benefit plan should be merged with the MTA Plan.

27.  By submitting the issue of whether the Trust's defined benefit plan should be merged with the MTA Plan to arbitration, the Employer Trustees have exceeded their authority under the Trust Agreement, thereby breaching the Trust Agreement in violation of Sections 301 and 302(c)(5) of the LMRA, 29 U.S.C. §§185 and 186(c)(5).

28.  By breaching the Trust Agreement, the Employer Trustees have interfered and are interfering with the Union's authority to negotiate with the MTA over merger of the Trust's defined benefit plan with another plan.

29.  The aforesaid breach has caused and will continue to cause Local 100 irreparable injury unless and until this Court

grants the relief requested herein.

30. No previous application has been made for the relief requested herein.

### AS AND FOR A SECOND CLAIM BY PLAINTIFF WAYNE BRYAN

31. Plaintiff Bryan repeats and realleges the allegations of paragraphs "1" through "30" as if set forth at length herein.

32. Pursuant to Section 404(a)(1)(D) of ERISA, 29 U.S.C. §1104(a)(1)(D), the Employer Trustees, as fiduciaries, are required to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the Plans, insofar as such documents and instruments are consistent with the provisions of Title I and Title IV of ERISA.

33. Upon information and belief the documents and instruments governing the Plans, including the Trust Agreement, are consistent with the provisions of Title I and Title IV of ERISA.

34. Because the Trust Agreement does not confer on the Trustees the power to merge the Trust's plans with any other plan, the trustees are without power to effectuate a merger of the Trust's defined benefit plan with another plan. By seeking to merge the Trust's defined benefit pension plan with the MTA Plan, the Employer Trustees have exceeded their authority under the Trust Agreement, and thereby have failed to discharge their duties in accordance with an instrument governing the Plans.

35.  By failing to discharge their duties in accordance with the terms of the Trust Agreement, the Employer Trustees have breached their fiduciary duty under Section 404(a)(1)(D) of ERISA, 29 U.S.C. §1104(a)(1)(D).

36.  The aforesaid breach of fiduciary duty has caused and will continue to cause plaintiff Bryan and the other participants in the Fund irreparable injury unless and until this Court grants the relief requested herein.

37.  No previous application has been made for the relief requested herein.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully request that this Court enter a judgment:

(a)  declaring that the acts complained of herein are in violation of the LMRA and ERISA;

(b)  enjoining and restraining permanently the violations alleged herein, including permanently enjoining the arbitration referenced herein;

(c)  awarding plaintiffs the costs of this action together with reasonable attorney's fees, as provided in Section 502(g) of ERISA, 29 U.S.C. §1132(g);

(d)   granting such other and further relief as this

Court deems necessary and proper.


Dated: June 21, 2006
       New York, New York


                         BROACH & STULBERG, LLP
                         Attorneys for Plaintiffs


                         By:_____
                         Judith P. Broach (JB 4041)
                         One Penn Plaza, Suite 2016
                         New York, New York  10119
                         (212) 268-1000

Exhibit A

# T.W.U. - NEW YORK CITY PRIVATE
## BUS LINES PENSION TRUST

<u>SECOND RESTATED TRUST AGREEMENT</u> made effective the 1st day of January, 1999, by and among the undersigned Union Trustees and Employer Trustees.

## WITNESSETH

WHEREAS: (1)   Local 100, Transport Workers Union of America AFL-CIO (the "Union") has entered into, and expects to continue to enter into, collective bargaining agreements which, among other things, require employer payments (the "Employer Contributions") to the T.W.U. - New York City Private Bus Lines Pension Trust;

(2)   The T.W.U. - New York City Private Bus Lines Pension Trust was established by an Agreement and Declaration of Trust (the "Trust Declaration"), dated as of November 23, 1963, and from time to time later amended by various instruments of amendment, under which a trust fund was established (the "Fund");

(3)   Said Trust Declaration has heretofore been amended and restated as the Restated Trust Agreement (the "Restated Trust Agreement"), effective as of January 1, 1976;

(4)   Pursuant to Section 4.3 of the Restated Trust Agreement, the Trustees may adopt a Plan of Benefits which shall state the level of benefits and the rules of eligibility thereof;

(5)   The Trustees adopted the T.W.U.- New York City Private Bus Lines Pension Trust (the "Pension Plan"), a defined benefit plan, amended and restated effective as of January 1, 1989;

(6)   The Trustees adopted the T.W.U.- NYC Private Bus Lines 401(k) Savings Plan (the "Savings Plan"), a defined contribution plan, effective as of February 1, 1999;

(7)   Article 11, Section 11.1 of the Restated Trust Agreement provides that the Restated Trust Agreement may be amended at any time in writing, executed by the Trustees;

(8)   It is the desire of the Trustees that the Second Restated Agreement and Declaration of Trust (the "Second Restated Trust Agreement") conform at all times with the applicable requirements of the Labor Management Relations Act of 1947, as amended; qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as amended (the "Code") and the Employee Retirement Income Security Act of 1974, as amended; ("ERISA");

(9)   It is the desire of the Trustees that this Second Restated Trust Agreement shall govern the Pension Plan and the Savings Plan; and

(10)   The Trust Declaration empowers the undersigned, as the original parties or the duly designated successors to all of the original parties to make and execute this Second Restated Trust Agreement.

NOW, THEREFORE, the parties agree:

1.0    Name, Nature and Purpose, Definitions.

1.1    The trust fund heretofore established by the Trust Declaration and continued by the Restated Trust Agreement and this Second Restated Trust Agreement shall be known as the Transport Workers Union - New York City Private Bus Lines Pension Trust, (the "Fund").

1.2    The sole purpose of the Fund, the Pension Plan and the Savings Plan is to provide benefits permitted by law to employees and their beneficiaries to the extent that the Trustees determine feasible and to defray the expenses of doing so. The assets of the Fund attributable to the Pension Plan shall only be used for the purposes of the Pension Plan and the assets of the Fund attributable to the Savings Plan shall only be used for the purposes of the Savings Plan.

1.3    It is intended that each Plan of Benefits promulgated pursuant hereto shall be a "multi-employer plan" and that the Trustees, collectively, shall be the "administrators" of the Fund and each Plan within the meaning of ERISA.

1.4    Unless the context clearly requires otherwise, whenever the following terms are used in this Second Restated Trust Agreement, they shall mean only as follows:

(1)    "Agreement" means a collective bargaining agreement between the Union and any Employer which requires Employer Contributions to the Fund.

(2)    "Code" means the Internal Revenue Code of 1986, as now in effect or hereafter amended and all regulations thereunder.

-2-

SR2WY47732IV9

(3)     "Employee" means a person who is employed in a bargaining unit covered by an Agreement or who is employed by the Union or by a multi-employer fund to which the Union is party, and for whom the Union or such fund has agreed to pay and the Trustees have agreed to accept contributions on the same conditions that apply to other Employees.

(4)     "Employer" means Queens Surface Corp., Triboro Coach Corp., and Jamaica Buses, Inc.  The Union, the Fund and any affiliated fund (that is, a fund sharing the same premises and general operating expenses and with substantially the same Employers) shall also be considered Employers under this Trust Agreement solely and exclusively for the purpose of permitting each of them to contribute to the Fund on behalf of their full-time employees, and to permit their said employees to participate in the Plans.  Except for their right to make such contributions to the Fund, the Union, the Fund and any affiliated fund shall have no rights, privileges or powers as an Employer under this Trust Agreement or the Plans.  If any situation should arise in which the rules of the Plans are not applicable to the Union or the Fund or any affiliated fund and its employees, the Trustees shall have the power to make appropriate rules and regulations with respect to the Union or the Fund or any affiliated fund and its employees.

(5)     "Employer Contributions" mean the payments which an Employer is required to make to the Fund pursuant to an Agreement or pursuant to the provisions of each of the Plans.

(6)     "ERISA" means the Employee Retirement Income Security Act of 1974, as now in effect or hereafter amended and all regulations thereunder.

(7)     "Fund" means the trust fund heretofore established by the Trust Declaration and continued by the Restated Trust Agreement and this Trust Agreement, known as the Transport Workers Union - New York City Private Bus Lines Pension Trust.

(8)     "Participant" means an employee or former employee who is eligible to participate in the benefits provided by the Plans under the criteria established by each Plan.

(9)     "Participant Contributions" mean the contributions made to a Plan by a Participant.

(10)    "Pension Plan" means the T.W.U. - New York City Private Bus Lines Pension Trust, amended and restated effective as of January 1, 1989.

(11)    "Plan" or "Plan of Benefits" are used interchangeably to mean the plan of benefits and the rules and regulations pertaining thereto, as promulgated and from time to time amended by the Trustees.

(12)    "Savings Plan" means the T.W.U. - New York City Private Bus Lines 401(k) Savings Plan, effective as of February 1, 1999.

(13)    "Trust Agreement" means this instrument, including amendments made pursuant hereto.

SR2HY\477321v9

(14)    "Trustees" mean the parties so designated herein and includes their successors. "Employer Trustees" and "Union Trustees" mean trustees designated pursuant to Section 3.1 hereof.

(15)    "Union means Local 100, Transport Workers Union of America AFL-CIO.

## 2.0    The Fund.

2.1    The Employer Contributions and/or Participant Contributions, heretofore and hereafter made in accordance with the provisions of the Pension Plan, as well as their proceeds, increments and earnings, shall constitute the assets of the Pension Plan.

2.2    Employer Contributions and/or Participant Contributions heretofore and hereafter made in accordance with the provisions of the Savings Plan, as well as their proceeds, increments and earnings shall constitute the assets of the Savings Plan.

2.3    The Union assigns to the Trustees the sole right to receive the Employer Contributions and Participant Contributions, but without prejudice to the Union's rights under any Agreement to enforce payment of the Employer Contributions to the Trustees.

2.4    Neither the Union, a Trustee, nor an Employer shall have any liability to pay or provide any benefits under each Plan of Benefits or have any other liability for obligations of the Plans and only the assets of each Plan shall be available for the provision of such benefits and for the other purposes of this Trust Agreement, and the liability of each Plan shall be limited to its assets. At no time and under no circumstances shall any part of the assets of the Plans revert to or be recoverable by an Employer or be used for or diverted to any purpose other than . for the exclusive benefit of persons entitled to benefits under this Trust Agreement or each Plan.

-4-

The foregoing shall not prohibit the return of payments of contributions made by mistake of fact within one (1) year after any such payment.

2.5 Neither an Employer, Employee, nor any party hereto, nor any person claiming in the right of any of them, shall have any right, title, or interest in the assets of the Plans except only that Participants entitled to benefits under each Plan of Benefits shall be entitled to such benefits in the amount provided therein and subject to the conditions thereof. An Employee shall not have the right to any part of the Employer Contributions in place of such benefits.

2.6 Except with respect to a qualified domestic relations order as defined in Section 414(p) of the Code, no Employee, Participant, or beneficiary of a Plan of Benefits may waive any right to benefits or assign, transfer, pledge, encumber, anticipate, or in any way impair her or his right to any benefits. Neither the Fund, the Plans nor any of the Plan's assets shall be liable for the debts of an Employee, Participant or beneficiary nor shall benefits be subject to garnishee, attachment, or execution, except that the Fund may offset overpayments made by the Fund to an Employee, Participant or beneficiary against later benefits payable by the Fund pursuant to the provisions of the Plans.. The Trustees shall not pay a benefit to anyone other than the Employee, Participant or beneficiary personally or to her or his representative or distributees as provided in each Plan of Benefits.

3.0 The Trustees.

3.1 The Fund shall be administered by ten (10) Trustees, of whom five (5) shall be designated by the Union (the "Union Trustees") and two (2) shall be designated by Queens Surface Corp., two (2) shall be designated by Triboro Coach Corp., and one (1) shall be

-5-

UQWMNZ:B1r1

designated by Jamaica Buses, Inc. (the "Employer Trustees"). At all times the number of Union Trustees shall be equal to the number of Employer Trustees. The Trustees are vested with all right, title, and interest in and to the Fund.

3.2    The Trustees shall serve without compensation but shall be reimbursed for all reasonable and necessary expenses incurred in performing their duties. The Fund shall save them harmless from any costs, counsel fees, or other expenses growing out of their office or involving the Fund and shall provide liability and other insurance permitted by law.

3.3    By their subscriptions hereto, each of the undersigned Trustees accepts the Fund and the Trust Agreement hereby created, consents to act as Trustee hereunder, and agrees to administer the Fund and the Plans as herein provided. A successor Trustee may not serve until he files a similar acceptance with the Fund. Upon so doing, such successor shall be vested with all the rights and powers of the predecessor Trustee.

3.4    A Trustee shall serve at the pleasure of the party which designated him and shall cease to serve when the Union or the designating Employer, as the case may be, notifies the Fund in writing that it is duly designating a successor and such successor files with the Fund a written acceptance of the duties of the office.

3.5    A Trustee may resign upon ten (10) days notice by an instrument in writing addressed to the remaining Trustees and delivered to the Fund Secretary (as described in Section 4.11 hereof) for transmittal to them. Such resignation shall become effective upon the date stated in the notice unless a successor is qualified sooner.

3.6     A vacancy in the office of Trustee shall be promptly and duly filled by the party which designated the Trustee whose office has become vacant. Should a vacancy or vacancies exist among the Trustees for a period of thirty (30) days, a successor Trustee shall be designated by the balance of the Employer Trustees or the Union Trustees, as the case may be. A vacancy or vacancies in the office of Trustee shall not impair the power of the remaining Trustees to administer the Fund or the Plans.

3.7     The Trustees shall be governed by the following procedures:

(1)     The Trustees shall select from among themselves a Chairman and a Treasurer who shall serve until removed by a majority vote of the Trustees present and voting at a meeting of the Trustees. The Trustees shall set forth by formal resolutions, the persons, by name or title, who shall have authority to act as signators on drafts, checks or other withdrawal of the Fund;

(2)     The vote of the Trustees may be cast in person by the Trustees at a meeting or any Trustee may empower, by signed writing (e.g., by proxy), any other Trustee or Trustees to act on his or her behalf at any meeting of the Trustees;

(3)     A quorum for the transaction of business shall consist of at least six (6) Trustees. A majority of a quorum at a meeting shall be the act of the Trustees provided that such majority shall include at least two (2) Union Trustees and two (2) Employer Trustees. Actions of the Trustees may also be taken upon the written consent of all of them without a meeting.

(4)     The Trustees shall meet at least annually and upon the call of the Chairman, or upon the call of any three (3) Trustees upon at least five (5) days notice of the time and place of the meeting. Notices of meetings shall be in writing and shall be given to each Trustee. A meeting may also be held at any time without notice if all of the Trustees consent to such a meeting;

(5)     In the event of a deadlock upon any question coming before the Trustees for decision or resolution, then on the written request of any two (2) Trustees, the matter or dispute shall be submitted for decision to the Impartial Chairman of the Local Private Transit Industry in New York City. Said Impartial Chairman shall, for the purpose of deciding the matter or dispute, be vested with full voting powers of a Trustee; and

(6)     The Trustees shall cause written minutes of the business transacted at their meetings to be kept, including the matters voted upon and the votes of each Trustee, and copies to be furnished with reasonable promptness to each Trustee. They shall also keep accurate records of their transactions, and their books of account shall be audited at least

-7-

annually by a certified public accountant, copies of which shall be furnished to each Trustee. A copy of each audit report shall be kept available for inspection by interested parties at the Fund office.

### 4.0   Administration of the Fund.

4.1   The Trustees shall use and apply the property of the Fund attributable to the Pension Plan only:

(1)   To pay the expenses which they determine to be reasonable and necessary to administer the Pension Plan; and

(2)   To provide for the benefits intended by the Pension Plan, and for no other purpose.

4.2   The Trustees shall use and apply the property of the Fund attributable to the Savings Plan only:

(1)   To pay the expenses which they determine to be reasonable and necessary to administer the Savings Plan; and

(2)   To provide for the benefits intended by the Savings Plan and for not other purpose;

4.3   The Trustees may, from time to time, promulgate other Plans which shall state the provisions for benefits and the rules of eligibility thereof. Further, the Trustees have the authority to amend all Plans, either retroactively or prospectively, as they deem necessary or desirable, provided that:

(1)   No amendment may provide for the payment of any benefits which will result in a loss of the tax-exempt status of the Fund or Plans, or an impairment of the tax deductibility of the Employer Contributions to the Plans;

(2)   Divert any part of the Plans to any other purpose or revest any part of the Plans in any Employer; or

-8-

SR2NT\477321v9

(3)  Alter, change, modify, or amend any provisions of an Agreement.

4.4  The Trustees shall have the exclusive power from time to time to determine what benefits the Fund is able feasibly to provide under the Pension Plan and generally, under the Plans, to determine the eligibility requirements, to determine the rules and procedures for obtaining and administering such benefits, and to amend, modify or repeal any of the foregoing in accordance with applicable law.

4.5  The Trustees shall have the exclusive power to verify claims for the payment of benefits and to determine whether the conditions for the payment of benefits have been fulfilled.

4.6  Each Plan shall provide for a written explanation to a person whose claim for benefits has been denied of the specific reason for the denial with adequate notice or a reasonable opportunity for a full and fair review of such decision by the Trustees, a committee of the Trustees, or a third party, as the Trustees may arrange.

4.7  The Trustees shall not be required to submit any provisions of the Plans to the arbitration and grievance procedures of an Agreement.

4.8  The Trustees shall also have power:

(1)  To construe this Trust Agreement, the Plans, and their rules and regulations. Any construction or determination adopted by the Trustees in good faith shall be binding upon all parties, Participants, and beneficiaries;

(2)  To enforce by appropriate action in their discretion, the payment of contributions by Employers to the Plans. If any Employer defaults in the making of such payments there shall be added to the obligation of the Employer who is in default reasonable attorney's fees of twenty percent (20%), interest at the rate of two percent (2%) over the prime rate and all other expenses incurred by the Trustees in connection with the default;

-9-

      (3)     In their own names, or in the name of the Fund or Plans, to demand, collect, and receive Employer Contributions, to sue and institute or take any actions in law, equity, bankruptcy, arbitration, or otherwise to enforce or vindicate any right of the Fund, and to settle, adjust, or compromise any claim as they deem necessary or desirable;

      (4)     To enter into arrangements with other funds or with the Union to share office space, service and facilities and to pay a reasonable consideration therefor;

      (5)     To enter into contracts, to conduct affairs of the Fund in corporate or other form, to keep property and securities registered in the name of the Fund or in the name of a bank or other fiduciary or agents or nominees of a fiduciary of the Fund, and to buy, sell, lease, convey, mortgage, or dispose of any property upon such terms as they deem proper, and to execute and deliver appropriate instruments in connection therewith;

      (6)     To establish and maintain reserves and/or a funding policy;

      (7)     To pay taxes, assessments, levies, and other charges imposed by law;

      (8)     To delegate any of their ministerial or administrative powers or duties to agents, employees, or others, including the Union or a Trustee, except that the Trustees may not authorize any Employer, or the Union, or any representative of them, to make any representation to a Participant or prospective participant regarding eligibility for the right to benefits from the Fund.  Such representations may be made only in writing and only by an authorized representative of the Fund and in their names; and

      (9)     To do all other acts that they consider necessary or appropriate to effectuate the purposes of the Fund and the Plans, subject always to the provisions of applicable law, this Trust Agreement and the Plans.

    4.9    The Trustees shall have the power, in their discretion:

      (1)     To invest and reinvest assets of the Plans as they determine are not necessary for current expenditures or liquid reserves without distinction between principal and income in such investments as are lawful for the investment of such employee trust funds, and to sell, exchange, or otherwise dispose of such investments at any time and from time to time, including, but not limited to the investment or reinvestment of all or any part of the Fund in a common commingled, or separately managed trust fund or funds which has been established in order to provide diversified investments only for qualified pension and profit sharing trusts which meet the requirements of Section 501(a) and 401(a) of the Code, provided that such common commingled or separately managed trust fund or funds shall constitute an integral part of a Plan and this Trust Agreement;

      (2)     By resolution, to delegate to a committee of the Trustees such investment duties and responsibilities with respect to such assets of the Plans as the Trustees shall specify in such delegation;

-10-

(3)    By resolution, to appoint one or more investment managers (as defined in Section 3(38) of ERISA) to be responsible for the management, acquisition, disposition, investing, and reinvesting of such assets of the Plans as the Trustees shall specify. Any such delegations shall be terminable by the Trustees upon not more than thirty (30) days written notice. The fees and charges of such investment manager shall be paid from the assets of the Plan for which such investment manager has served.

(4)    To allow, in accordance with Section 404(c) of ERISA, that each Savings Plan Participant shall have the exclusive right, in accordance with the provisions of the Savings Plan, to direct the investment by the Trustees of all amounts allocated to the separate accounts of such Savings Plan Participants among any one or more of the investment funds under the Savings Plan. Investment directions by Savings Plan Participants with respect to all contributions made under the Savings Plan shall be furnished to the Trustees or an agent of the Trustees by the Participants. In making any investment of the assets of the Savings Plan, the Trustees shall be fully entitled to rely on such directions furnished by the Participants with respect to the investment of contributions under the Savings Plan and shall be under no duty to make any inquiry or investigation with respect thereto. If the Trustees receive any contribution under the Savings Plan that is not accompanied by written instructions directing its investment, the Trustees may, in their discretion, hold or return all or a portion of the contribution uninvested without liability for loss of income or appreciation pending receipt of proper investment directions. Notwithstanding anything to the contrary herein, it is specifically intended under the Savings Plan and this Trust Agreement that the Trustees shall have no discretionary authority to determine the investment of the assets of the Savings Plan; and

(5)    To employ such administrative, professional expert or clerical assistance as they deem necessary or desirable in the performance of their duties.

4.10    The Trustees may, by resolution or by-law or by provisions of this Trust Agreement, delegate other fiduciary and administrative duties such as, but not limited to, those related to eligibility, audits, collections, administrative budgets and expenses, to committees of the Trustees consisting of an equal number of Employer and Union Trustees, or to other individuals as they may deem appropriate or necessary.

4.11    The Trustees shall employ a Fund Secretary for the Fund who shall, under the direction of the Trustees or an appropriate committee of the Trustees, administer the Fund offices, coordinate and administer the record-keeping and clerical services, provide for the coordination of actuarial services, prepare (in cooperation, where appropriate, with the consulting

-11-

actuary and independent auditor) all required reports and other documents to be filed or disseminated by the Fund, supervise the collection of Employer Contributions and Participant Contributions, and furnish Participants with information concerning their rights to benefits and assist them in preparing applications for benefits, review such applications, supervise the payment of such benefits, and perform such other duties and furnish such other services as the Trustees may assign. The Fund Secretary shall be the custodian, on behalf of the Trustees, of the documents and records of the Fund. The Fund Secretary shall serve at the pleasure of the Trustees.

    4.12    The Trustees shall keep uninvested funds in such banks or similar depositories that they may designate, to be subject to withdrawal upon the signatures of those persons designated by the Trustees pursuant to the provisions of Section 3.7(1) of this Trust Agreement. They shall also provide for fidelity and surety bonds in at least the amounts required by law, the premium costs of which shall be paid from the assets of the applicable Plan. At the cost of the applicable Plan, and to the extent permitted by law, they may also provide for such errors and omissions and liability insurance for the Fund as such, themselves, and employees or agents of the Fund while engaged in the business of the Fund or in activities in its behalf as they deem desirable, provided that an insurance policy paid for by the Plans shall provide such recourse by the insurer against a Trustee as may be required by law.

    4.13    Employers shall be required to furnish to the Fund regular written reports containing the names, addresses, social security numbers, hours worked, earnings and other information concerning their Employees, in the form and at the times that the Trustees may reasonably require, and Employer records which the Trustees' auditors deem relevant to an examination, including, without limitation, payroll books and records, cash books, ledgers,

-12-

contracts, tax returns and reports, which shall be subject to audit and copying by the representative of the Trustees at the Employer's place of business during regular business hours when the Trustees deem such examination and audit advisable.

     4.14   To whatever extent permitted by law, the Trustees and each individual Trustee shall not be liable for any error or judgment, or for any loss arising out of any act or omission in the execution of this Trust Agreement, including any loss resulting from the investment and reinvestment of the corpus of the Fund (assets of the Plans), so long as they act in good faith, nor shall any Trustee, in the absence of his own bad faith, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any employee, agent or attorney selected or appointed by or acting for the Trustee.

     5.0   Third Parties.

     5.1   A third party dealing with the Fund or the Plans shall not be required to satisfy himself that any money he pays or property he transfers to the Fund on behalf of the Plans is properly applied to its purposes or be obliged to inquire into the necessity or desirability of any action of the Trustees.

     5.2   Every instrument executed by the Trustees, or by the Chairman, shall be conclusively presumed in favor of any party relying thereon that, at the time of execution of said instrument: (1) the Trust Agreement hereby created was in full effect, (2) the execution of the instrument was authorized by this Trust Agreement, and (3) the Trustees or the said Chairman were duly authorized and empowered to execute the instrument.

5.3      The Trustees shall have discretionary authority to determine eligibility for benefits and, in making such determination, shall have discretionary authority to interpret the terms of the Plans and the Trust Agreement. The benefit eligibility decision and the interpretation of the terms of the Plans and the Trust Agreement shall be given deference in any arbitral or judicial appeal of the decision. In any such appeal, the Trustees' decision may be overturned only if the interpretation of the terms of the Plans or the Trust Agreement was arbitrary and capricious or if the decision was otherwise arbitrary and capricious.

6.0      Construction.

6.1      The masculine, feminine, and neuter genders, and singulars and plurals, are used interchangeably herein and include each other.

6.2      The headings and titles of the articles and sections herein are only for convenience of reference and are not for the purpose of construction or giving effect to or determining rights under any provision hereof.

6.3      This Trust Agreement shall be construed under the laws of the State of New York except as to matters governed by Federal Law.

7.0      Savings Clause.

7.1      If any provision of this Trust Agreement be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely affect the other provisions hereof or its application to any other person or instance, unless such illegality shall make the functioning of the Fund and/or the Plans impossible.

8.0   Other Employers and Employees.

8.1   The Trustees may, in their discretion, extend the coverage of this Trust Agreement to other parties upon the agreement of such parties to conform to the conditions of this Trust Agreement and to make actuarially equivalent contributions for benefits.

9.0   Judicial Settlement.

9.1   The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and to seek judicial approval or a judicial determination or instructions as to any question of construction or action hereunder.

10.0   Termination of Trust.

10.1   This Trust Agreement shall continue for such time as may be necessary to accomplish the purpose for which it was created but may be terminated at any time by the Trustees. The Union and a majority of Employers may also terminate this Trust Agreement by providing six (6) calendar months written notice to the Trustees. The Trust Agreement shall be deemed terminated at the expiration of the six (6) month period.

10.2   Upon any such termination, the Trustees shall notify forthwith each Employer and the Union. The Trustees shall continue as Trustees for the purpose of dissolution and winding up the affairs of the Fund and the Plans. Upon termination, all of the Fund's assets shall be allocated as provided by the Plans or as required by law. The Trustees shall apply the assets of the Plans to pay or to provide for the payment of all administration expenses and contractual obligations of the Plans and shall apply any remaining assets in accordance with the Plans, subject to any priorities or other provisions established by ERISA. Under no

-15-

SHZNY\417321v1

circumstances shall any portion of the assets of the Plans revert or be paid to an Employer or to the Union.

10.3   In the event of the termination of the Fund, it shall be the duty and obligation of the Trustees, and each of them, to execute such documents, deeds, assignments or other indicia of title as may be necessary and proper to effectuate such transfer and termination. In the event of such transfer or termination, the Trustees shall be held harmless for any further obligation of the Fund, for any further duties as Trustees, and the obligation and debts of the Fund shall not be considered or become a personal obligation of the Trustees or of the parties who originally designated the Trustees to act in that capacity.

11.0   Amendments.

11.1   The provisions of this Trust Agreement may be amended at any time by an instrument in writing executed by the Trustees, provided, that in no event shall the Fund and the Plans be used for any purpose other than the purposes herein set forth.

-16-

IN WITNESS WHEREOF, the Trustees have executed this Second Restated Trust Agreement to evidence their acceptance of the Fund created hereunder and have agreed to be bound by all of the terms of said agreements and by this instrument.

Dated: _Sept 28_, 1999

Union Trustees

_____
Robert Dowd

_____
Charles Petrone

_____
George Jennings

_____
Daniel Walchak

_____
Michael Curran

Employer Trustees

_____
Thomas Eagar

_____
Martin Burke

_____
Stephen J. Eagar, Sr.

_____
Joseph Nocera

_____
Jerome Cooper

-17-