UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LOCAL 100, TRANSPORT WORKERS
UNION, AFL-CIO; ROGER TOUSSAINT,
as President of Local 100,
Transport Workers Union,
AFL-CIO; and WAYNE BRYAN,

    Plaintiffs,

  -against-

BERNARD ROSEN, MARGARET CONNOR,
MARK PAGE, MARGE HENNING and
SUSAN KUPFERMAN, as Employer
Trustees of the T.W.U.-New York
City Private Bus Lines Pension
Trust,

    Defendants.
------------------------------------X

06 CV 4787

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND MOTION FOR A PRELIMINARY INJUNCTION**

        BROACH & STULBERG, LLP
        Attorneys for Plaintiffs
        One Penn Plaza, Suite 2016
        New York, New York  10119
        (212) 268-1000

On the Brief:
 Judith P. Broach, Esq.
 Ira Cure, Esq., Of Counsel

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LOCAL 100, TRANSPORT WORKERS        :
UNION, AFL-CIO; ROGER TOUSSAINT,
as President of Local 100,          :
Transport Workers Union,
AFL-CIO; and WAYNE BRYAN,           :

                Plaintiffs,         :

        -against-                   :

BERNARD ROSEN, MARGARET CONNOR,     :
MARK PAGE, MARGE HENNING and
SUSAN KUPFERMAN, as Employer        :
Trustees of the T.W.U.-New York
City Private Bus Lines Pension      :
Trust,
                                    :
                Defendants.         :
------------------------------------X
```

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND MOTION FOR A PRELIMINARY INJUNCTION**

### Introduction

This memorandum of law is submitted on behalf of the plaintiffs, Local 100, Transport Workers Union, AFL-CIO ("Local 100" or "the Union"); Roger Toussaint, as President of Local 100, Transport Workers Union, AFL-CIO; and Wayne Bryan, a participant in the T.W.U.-New York City Private Bus Lines Pension Trust ("the Trust"), in support of their application for a temporary restraining order and motion for a preliminary injunction. Plaintiffs seek to enjoin defendants, Bernard Rosen, Margaret Connor, Mark Page, Marge Henning and Susan Kupferman, as Employer

Trustees of the Trust, from continuing to arbitrate an issue which plaintiffs maintain is not arbitrable. Defendants are seeking, through arbitration, to merge the Trust with a pension plan maintained by the Metropolitan Transportation Authority ("MTA"). Plaintiffs contend that defendants' efforts to merge the Trust, by seeking an award from an arbitrator, are unlawful because the Trust's Trust Agreement does not empower the trustees to effect such a merger.

## FACTS

The facts which form the basis for this action are fully set forth in the accompanying declaration of Ed Watt. For the convenience the Court, those facts are summarized herein.

For many years, plaintiff Local 100 was a party to a series of collective bargaining agreements with certain private bus companies which operated on New York City streets pursuant to operating authority granted to them by the City of New York ("the Bus Companies").

Local 100 and the Bus Companies established the Trust in 1963. Under the terms of the collective bargaining agreements entered into between Local 100 and the Bus Companies, the Bus Companies were obligated to make contributions to the Trust. The Trust maintains two plans ("the Plans"), one of which is a multiemployer defined benefit pension plan within the meaning of Section 3(37) of the Employee Retirement Income Security Act of

1974, as amended ("ERISA"), 29 U.S.C. §1002(37). The other is a defined contribution plan maintained pursuant to Section 401(k) of the Internal Revenue Code of 1986, as amended.

The Trust, as required by Section 302(c)(5) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §186(c)(5), is administered by a board of trustees composed of an equal number of trustees appointed by the Union and by the contributing employers to the Trust.

In 2002, the City of New York announced its intention to revoke the operating authority of the Bus Companies and either to take over the routes and operations of the Bus Companies or transfer them to the Metropolitan Transportation Authority ("MTA"). By on or about February 27, 2006, the City of New York and the MTA had completed negotiations with all of the Bus Companies for the MTA's takeover of the routes and operations of the companies.

The MTA's takeover of the Bus Companies had an immediate effect upon the obligation of the Bus Companies to contribute to the Trust. As of the date of its takeover, each Bus Company ceased to have an obligation to contribute to the Trust on behalf of employees whose jobs had been transferred to the MTA. As a result, the Trust incurred a "mass withdrawal" from the defined benefit pension plan within the meaning of 29 C.F.R. §1001.2. This mass withdrawal resulted in the termination of the Trust's

defined benefit pension plan.  Section 4041A of ERISA, 29 U.S.C. §1341a.

Notwithstanding the termination of the defined benefit plan, the Trust's trustees remain obligated to administer the Trust and both the defined benefit and defined contribution plans in accordance with the Trust Agreement, the LMRA and ERISA.

On or about January 30, 2006, the Trust's Employer Trustees resigned and appointed in their stead, Bernard Rosen, Margaret Connor, Mark Page, Marge Henning and Susan Kupferman as Employer Trustees of the Trust.  At a meeting of the Board of Trustees on or about March 2, 2006, the new Employer Trustees proposed a resolution that the Trust's defined benefit plan be merged into the MTA Defined Benefit Pension Plan ("the MTA Plan").  Upon information and belief, all five Employer Trustees voted in favor of the resolution, and all five Union Trustees voted against the resolution.  The Trustees, therefore, were deadlocked.

Pursuant to the requirements of Section 302 of the LMRA, the Trust Agreement provides a procedure, at Article 3, §3.7(5), for resolving disputes when the trustees are deadlocked.  The trustees may submit to arbitration a "deadlock upon any question coming before the trustees for decision or resolution."
Article 4 of the Trust Agreement sets forth the powers granted to the trustees and the limitations on such powers.  Pursuant to Article 4, the trustees may only use the assets attributable to

each plan to pay the plan benefits and reasonable expenses of administering that plan.  Article 4 also empowers the trustees to take certain actions necessary for the day-to-day administration of the Plans.  Nowhere in the Trust Agreement, however, are the trustees empowered to take on the settlor function of merging the Trust or the Plans with any other trust fund or plan.

The Trust is represented by co-counsel, one appointed by the Union Trustees and one appointed by the Employer Trustees.  Despite the Trust Agreement's silence concerning the Trustees' power to merge the Trust's defined benefit plan with the MTA Plan, on March 3, 2006, the Fund counsel appointed by the Employer Trustees submitted the dispute over the proposed merger to arbitration before Arbitrator Jacqueline Drucker.  One day of hearing has been held in that matter.  A second day of hearing is scheduled to take place on Friday, June 23, 2006.

Plaintiffs ask the Court to stay the arbitration and to issue a preliminary injunction because the trustees are not empowered to merge the Trust's plans with any other plans.

**ARGUMENT**

**POINT I**

**PLAINTIFFS ARE ENTITLED TO A
PRELIMINARY INJUNCTION STAYING ARBITRATION**

In order to obtain a preliminary injunction in the Second Circuit, the moving party must show (1) irreparable harm; and (2) either: (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting preliminary relief. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc. 596 F.2d 70, 72, (2d Cir. 1979); LaForest v. Former Clean Air Holding Company, Inc. 376 F.3d 48, 54 (2d Cir. 204). Plaintiffs can show both irreparable harm and a likelihood of success on the merits.

A.  **Plaintiffs Have Made a Showing Of Irreparable Harm**

If the above-described deadlock arbitration is permitted to continue, plaintiffs will suffer irreparable harm in a number of ways.

First, if the pending arbitration continues, the Trust, which provides benefits to certain of the Union's members, would be required to expend time and resources arbitrating an issue which, as discussed below in Point II, cannot be arbitrated and for which an award is not enforceable. Such a waste of resources constitutes irreparable harm. Maryland Casualty Company v.

6

Realty Advisory Board on Labor Relations, 107 F.3d 979, 985 (2d Cir. 1996).

Second, an arbitrator's decision that the plans should merge would usurp the Union's authority, as collective bargaining agent, to bargain over the ultimate disposition of the Trust and its assets. Such usurpation of bargaining authority is a harm that cannot be cured by money damages.

Third, as presently constituted, the Trust is governed by §302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5). The trustees are comprised of an equal number of employer-appointed and union-appointed trustees. In the event that the Employer Trustees are successful in the arbitration, Trust assets will be merged with the MTA Plan, which is administered exclusively by the MTA. The union's ability to appoint some of the individuals who control plan assets would be eliminated. This constitutes irreparable harm.

Fourth, because the MTA Plan is controlled exclusively by the MTA, the participants in the Trust, who are members of the Union, will be deprived of the benefit of having half of the trustees who make decisions about trust assets appointed by the Union. This, too, is irreparable harm.

**B.  Plaintiffs Have Demonstrated a Likelihood of Success on the Merits**

The resolution which the Employer Trustees submitted to arbitration seeks to merge assets of the Trust with the MTA Plan.

7

The resolution does not concern administration of the Trust, but instead concerns a more fundamental question of Trust governance. As will be demonstrated Point II, below, the issue raised in the pending arbitration is not arbitrable, and, therefore, plaintiffs are likely to succeed on the merits. <u>Bueno v. Gill</u>, 2002 WL 31106342 (S.D.N.Y. 2002), opinion adhered to on reconsideration, 237 F.Supp.2d 447 (S.D.N.Y. 2002). Moreover, as demonstrated in Point III, below, plaintiff Bryan, a participant in the Trust's plans is likely to succeed on his claim that the Employer Trustees' resolution constitutes a breach of fiduciary duty under Section 404 of ERISA, 29 U.S.C. §1104.

<u>POINT II</u>

**THE ISSUE SOUGHT TO BE ARBITRATED IS IN
FUNDAMENTAL CONFLICT WITH THE TRUST AGREEMENT
AND IS NOT CONCERNED WITH THE ADMINISTRATION
OF THE FUND; THEREFORE THE ISSUE IS NOT ARBITRABLE**

Employee benefit plans covered by the LMRA are required to provide for the resolution of trustee disputes concerning trust fund administration by arbitration. LMRA Section 302(c)(5)(B), 29 U.S.C. §186(c)(5)(B). In the Second Circuit, the definition of "administration" has, at least since 1960, been limited to matters within the trustees' power to implement. See <u>Mahoney v. Fisher</u>, 277 F.2d (2$^d$ Cir. 1960); <u>Barrett v. Miller</u>, 276 F.2d 429, 431 (2d Cir. 1960). ("While a trustee petitioning for the appointment of an umpire need not demonstrate that his interpretation that the issue was one the trustees could decide

8

was the correct one, he must at least establish that it is a possible one.")

In addition to the statutory limitations, trust documents, as in the instant case, often place limitations upon the trustees' power to change or modify the operation or administration of a plan. See Bueno v. Gill, supra.

Despite Section 302's stated policy of encouraging arbitration, courts have recognized that if the deadlock concerns an issue beyond the scope of the trustees' powers, the issue is not arbitrable under §302(c)(5)(B).

A case that is almost directly on point is Bueno v. Gill, supra. In Bueno, employer trustees attempted to spin off a portion of an LMRA-governed plan over the opposition of the union trustees. The union trustees contended that the trustees did not have the power to spin off a portion of the plan, and brought an action for a declaratory judgment that the issue was not arbitrable, but instead was subject to the collective bargaining process.

The Court analyzed Second Circuit law, and the relevant trust agreement, and concluded that

> The defendants [had] not identified any provision in the Trust Agreement that would allow the Trustees to divest the trust corpus of a portion of its assets consistent with the purpose of the Trust Fund. Because such an action would violate the Trust Agreement absent amendment, the proposal is not even arguably within the Trustees' power and the case may not be referred to arbitration.

9

Other courts have distinguished between matters of trust administration and matters beyond the scope of trust administration. In Hodges v. Holzer, 707 F.Supp. 1132 (M.D.La 1998), the Court analyzed different approaches to determining the scope of trust administration under LMRA Section 302(c)(5) and concluded that it did not have the power to appoint an umpire to arbitrate a dispute over whether a trust fund should merge with another trust fund. The Court concluded that a merger was not an ordinary matter of trust fund administration.

Cases where Courts have permitted arbitration of trustee deadlock disputes tend to deal with more prosaic matters. See, e.g., Employee Trustees of the Eighth District of Electrical Pension Fund v. Employer Trustees of the Eighth District Electrical Pension Fund, 959 F.2d 176 (10th Cir. 1992) (establishing annuity program did not require amendment of trust agreement, and issue of whether trustees should implement annuity plan could be submitted to arbitration). Citrin v. Erikson 911 F.Supp. 673 (S.D.N.Y. 1996). (Umpire appointed to resolve dispute over establishment of apprentice class).

Unlike Employee Trustees v. Employer Trustees, supra, the instant case concerns an extraordinary decision that would require amendment of the Trust Agreement. Bueno, supra, citing Sengapiel v. B.F. Goodrich Co., 156 F.3d 660, 665 (6th Cir. 1998) (A transfer of benefits is more analogous to amending a welfare

plan than administering it). If the trustees herein were permitted to merger of one of the Trust's plans with the MTA plan, they would be making a fundamental change in the Trust's governance. Courts have consistently recognized that such governance issues are beyond the scope of §302(c)(5)(B).

## POINT III

### THE EMPLOYER TRUSTEES' PROPOSED RESOLUTION CONSTITUTES A BREACH OF FIDUCIARY DUTY UNDER ERISA

Pursuant to Section 404(a)(1)(D) of ERISA, 29 U.S.C. §1104(a)(1)(D), the Employer Trustees, as fiduciaries, are required to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the Plans, insofar as such documents and instruments are consistent with the provisions of Title I and Title IV of ERISA. The instruments governing the Trust's plans, including the Trust Agreement, are consistent with the provisions of Title I and Title IV of ERISA.

Because the Trust Agreement does not confer on the trustees the power to merge the Trust's plans with any other plan, the trustees are without power to effectuate a merger of the Trust's defined benefit plan with another plan. By seeking to merge the Trust's defined benefit pension plan with the MTA Plan, the Employer Trustees have exceeded their authority under the Trust

11

Agreement, and thereby have failed to discharge their duties in accordance with an instrument governing the Plan and, therefore, have breached their fiduciary duty under Section 404(a)(1)(D) of ERISA, 29 U.S.C. §1104(a)(1)(D). <u>Cement and Concrete Workers District Council Pension Fund v. ULICO Casualty Company</u>, 387 F.Supp.2d 175, 185-186 (E.D.N.Y. 2005), citing <u>Dardaganis v. Grace Capital Inc.</u>, 889 F.2d 1237, 1242 (2d Cir. 1989).

## CONCLUSION

For all of the foregoing reasons, plaintiffs' Application for a Temporary Restraining Order and Motion for a Preliminary Injunction should be granted.

Dated:   New York, New York
         June 21, 2006

                                        Respectfully submitted,
                                        BROACH & STULBERG, LLP

                                        By: _____
                                            Judith P. Broach (JB4041)

                                        One Penn Plaza, Suite 2016
                                        New York, New York 10119
                                        (212) 268-1000

On the brief:
    Judith P. Broach, Esq. (JB4041)
    Ira Cure, Esq., Of Counsel (IC7121)