UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOCAL 100, TRANSPORT WORKERS
UNION, AFL-CIO; ROGER TOUSSAINT, as
President of Local 100, Transport Workers
Union, AFL-CIO, and WAYNE BRYAN,

                Plaintiffs,

- against -

BERNARD ROSEN, MARGARET
CONNOR, MARK PAGE, MARGE
HENNING and SUSAN KUPFERMAN, as
Employer Trustees of the T.W.U.-New York
City Private Bus Lines Pension Trust,

                Defendants.
------------------------------------------------------------X

Civ. No.: 06 Civ. 4787 (RPP)

**AFFIDAVIT OF MARK PAGE**

STATE OF NEW YORK    )
                            : ss.:
COUNTY OF NEW YORK  )

       Mark Page, being duly sworn, deposes and says:

       1.     I am a Trustee of the Transport Workers Union-New York City Private Bus Lines Pension Trust (the "Fund") and have been a Trustee since January of 2006. I also am the Director of Management and Budget for the City of New York, and I serve on the Board of the Metropolitan Transportation Authority ("MTA"). I am familiar with the facts and circumstances in this action. I submit this affidavit in support of the Employer Trustees' Memorandum of Law in Opposition to Plaintiffs' Order To Show Cause For Preliminary Injunction.

       2.     I became a Trustee of the Fund in connection with New York City's purchase of assets of seven private bus companies that operated on New York City streets. Three of these companies were the contributing employers to the Fund - Queens Surface Corp. ("QSC"), Triboro Coach Corp. ("Triboro"), and Jamaica Buses, Inc. ("Jamaica").

10176520.3

3. I agreed to serve as a Trustee because the former Employer-appointed Trustees did not want to continue serving as trustees after the companies they were affiliated with no longer had any operations or employees covered by the Fund.

4. I attended the March 2, 2006 Board of Trustees meeting. At this meeting, I moved the Resolutions to merge the Fund (the "Merger") with the Metropolitan Transportation Authority Defined Benefit Pension Plan ("MTA Plan"). All five Employer Trustees voted in favor of the Merger and all five Union Trustees opposed the Merger.

5. I voted against the Union Trustee's proposal to table the motion for Merger of the Fund because I understand that a proposal to merge into a government plan has been discussed since 2004. I also felt that further delay would be harmful to the Fund's participants and beneficiaries and that immediate approval of the Merger would provide the participants and beneficiaries with both certainty and security.

6. As I made clear at the March 2 meeting, and subsequently in the arbitration proceedings to resolve the deadlock, I support the Merger because it is in the best interest of the Fund's participants and beneficiaries. If the Merger is completed, no participant's or beneficiary's benefits will be reduced. Without the Merger, certain benefits already have been forfeited, and other benefits remain at risk of not being paid.

7. Since the three contributing employers of the Fund have withdrawn, the Fund is in a tenuous position in which it cannot pay all benefits promised. I was advised by counsel and by a letter from the Pension Benefit Guaranty Corporation (PBGC) that terminated plans are not allowed to pay "forfeitable benefits." This means that the Fund is not allowed to pay certain disability and death benefits. If the Fund is merged with the MTA Plan, then these benefits can and will be paid.

8. I also support the Merger because even for benefits that the Fund is currently allowed to pay, the only resources the Fund has available are existing assets and some possible amount of withdrawal liability that will be assessed on the former contributing employers. I understand that withdrawal liability is calculated based on what is needed by actuarial estimates to pay participants' and beneficiaries' vested benefits. The Fund's actuary has estimated that mass withdrawal liability might exceed $80 million. I am concerned that this full amount is unlikely to be collected and, therefore, even if all of the actuarial assumptions used to calculate that liability prove to be an accurate picture of future events, benefits will not be paid in full. Although the City of New York has agreed to indemnify QSC, Jamaica and Triboro for what they eventually are capable of paying in withdrawal liability, I am concerned that those employers do not have the assets to pay the full amount of the collective withdrawal liability. Also, the Fund is subject to investment risk and other risks relating to the actual benefit payments it will make. These risks can only be determined today on the basis of assumptions about the future which will inevitably be different from what actually happens. If future events require additional resources to pay scheduled benefits, the benefits that can be paid out will have to be reduced as there is no new revenue available to this terminated Fund. Thus, I believe there is a substantial risk that the Fund will be unable to pay all the benefits that have vested, not just because withdrawal liability might not be paid in full, but because it is impossible to accurately predict the future.

9. Additionally, I have been advised that the PBGC would only guarantee payment of a benefit multiplier of $38.75 to the Fund's participants and beneficiaries in the event the Fund is insufficiently funded, whereas under the Pension Plan, benefits amount to a benefit

multiplier of $82. Thus, if Fund resources do prove inadequate to pay the benefits, insurance would only cover less than half of expected benefits.

10. The MTA Plan is funded by amounts the MTA Plan's actuary determines are required contributions to ensure that all benefits are funded. The MTA Plan is a tax qualified governmental defined benefit plan with over $700 million in assets and is professionally and independently managed by leading investment and accounting professionals. The benefits under the Merger will mirror the benefits paid by the Fund and there is no risk of under-funding, as the MTA has never failed to pay benefits to which a participant was entitled. The MTA is a public authority created by the State legislature and has a $9.3 billion expense budget. Moreover, pursuant to an arrangement between the City of New York and the MTA, the City would ultimately be responsible for funding the MTA Plan to cover the costs for the former QSC, Triboro and Jamaica employees. The overwhelming advantage of Merger is that the benefits will be the liability of a plan with a source of current contributions on into the future. Mass transit always will be required in New York City, and the MTA is a public entity established to meet this public need. It is a creature of the State of New York, and on this particular matter, also has the benefit of an agreed upon reimbursement of these obligations by the City of New York.

11. If the Fund does not merge, it will be forced to incur administrative expenses that will further deplete its resources. These administrative functions, however, are already being provided by the MTA Plan for currently accruing benefits to former employees of QSC, Triboro and Jamaica.

12. I am aware of no downside to the Fund's participants and beneficiaries of executing the Merger.

10176520.3                                      4

13. I believe it is important to effectuate the Merger as soon as possible as there is a chance that the MTA may revoke the offer of the Merger. The leadership of the MTA is appointed by the Governor of New York and following the gubernatorial election in 2006, the leadership of the MTA may well change. Due to my substantial concerns about the welfare of the participants and beneficiaries of the Pension Plan absent the Merger, acting quickly is imperative to ensure that the participants and beneficiaries receive their full pensions and other benefits.

14. I believe that the advantages of the Merger far outweigh any potential adverse results and remain fully in support of the proposal.

_____
Mark Page

Sworn to before me this
27th day of June 2006.

_____
Notary Public

**Prescott D. Ulrey**
**Notary Public, State of New York**
**No. 31-02UL5049524**
**Qualified in New York County**
**Commission Expires: 4-26-2010**

10176520.3                                                    5