UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                        :
LOCAL 100, TRANSPORT WORKERS UNION,                     :
AFL-CIO; ROGER TOUSSAINT, as President of               :
Local 100, Transport Workers Union, AFL-CIO, and        :
WAYNE BRYAN,                                            :
                               Plaintiffs,              :
                                                        :
                 -vs.-                                  :   06 Civ. 4787 (RPP)
                                                        :
BERNARD ROSEN, MARGARET CONNOR, MARK                    :
PAGE, MARGE HENNING and SUSAN                           :
KUPFERMAN, as Employer Trustees of the T.W.U.-          :
New York City Private Bus Lines Pension Trust,          :
                                                        :
                               Defendants.              :
                                                        :
------------------------------------------------------------------------x


DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION


Of Counsel

        Ronald E. Richman (RR 9815)
        Mark E. Brossman (MB 4654)
        Scott A. Gold (SG 3024)

**Table of Contents**

Page

I.   PRELIMINARY STATEMENT ..................................................................................................1

II.  STATEMENT OF FACTS......................................................................................................3

    A.   Background ..............................................................................................................3

        1.   The Fund...................................................................................................3

        2.   Authority of the Trustees .........................................................................3

        3.   Voting and Deadlock Rules ......................................................................4

    B.   The Proposed Merger..............................................................................................4

III. ARGUMENT .........................................................................................................................7

THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A PRELIMINARY
INJUNCTION ...........................................................................................................................7

    A.   This Court Has No Jurisdiction Over The Claims of the Union and its President.............7

        1.   Directly Applicable Precedent of the U.S. Supreme Court Provides that LMRA §
            302(E) Does Not Confer Jurisdiction Over the Union's Claims ...........................8

        2.   The Declaratory Judgment Act Does Not Confer Jurisdiction Upon This Court11

        3.   The Only Federal Question that Exists Arises Under ERISA and Neither the
            Union Nor Its President Has Standing to Assert It..............................................10

    B.   The Governing Legal Standard Favors Defendants ..........................................................12

    C.   Plaintiffs Have Failed to Demonstrate Irreparable Harm....................................................12

    D.   Plaintiffs Have No Likelihood of Success on the Merits as the Dispute is Clearly
        Arbitrable ...................................................................................................................15

        1.   Second Circuit Law Takes a Broad View of What Disputes Should be Arbitrated ...15

        2.   The Trustees of the Fund Have the Authority to Merge the Fund and the Instant
            Question is Properly Before the Arbitrator.................................................................17

    E.   The Proposed Merger Does Not Constitute a Breach of the Employer Trustees' Fiduciary
        Duties Under ERISA .........................................................................................................19

IV.  CONCLUSION .....................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,*
2005 WL 1162448, at *3 (S.D.N.Y., 2005) ............................................................................10

*Albradco, Inc. v. Bevona,*
982 F.2d 82, 85 (2d Cir. 1992) ...............................................................................................11

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,*
140 F.3d 101 (2d Cir. 1998)......................................................................................................7

*AT&T Tech., Inc. v. Comm. Workers of Am.,*
475 U.S. 643, 106 S.Ct. 1415 (1986) .....................................................................................16

*Barrett v. Miller,*
276 F.2d 429, 433 (2d Cir. 1960) ...........................................................................................16

*Bueno,*
2002 WL 31106342 ...........................................................................................16, 17, 18, 19

*Gold v. Pennachio,*
757 F. Supp. 13 (S.D.N.Y. 1991).............................................................................................16

*Firestone Tire & Rubber Co., v. Bruch,*
489 U.S. 101, 114 (1989).........................................................................................................13

*Franchise Tax Bd. V. Constr. Laborers Vacation Trust,*
463 U.S. 1, 27, 103 S.Ct. 2841 (1983).....................................................................................11

*Hauskins v. Stratton,*
721 F.2d 535 (5th Cir. 1983)....................................................................................................16

*Hawkins v. Bennett,*
704 F.2d 1157 (9th Cir. 1982)..................................................................................................16

*Hodges v. Holzer,*
707 F. Supp. 232......................................................................................................................18

*Local 144 Nursing Home Pension fund v. Demisay,* ..............................................................9, 10
508 U.S. 591, 587 (1993)

*Mahoney v. Fisher,*
277 F.2d 5 (2d Cir. 1960)...................................................................................................16, 17

*Maryland Casualty Co. v. Realty Advisory Bd. On Labor Relations,*
    107 F.3d 979 (2d Cir. 1997)................................................................................13

*Mazurek v. Armstrong,*
    520 U.S. 968, 117 S.Ct. 1865 (1997)..................................................................12

*Metro. Life Ins. Co., v. Taylor,*
    481 U.S. 58 (1987)..............................................................................................11

*Moore v. Consol. Edison Co. of N.Y., Inc.,*
    409 F.3d 506 (2d Cir. 2005)................................................................................12

*N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc.,*
    453 U.S. 322, 101 S.Ct. 2789 (1981)...................................................................8

*Planet Footwear, S.A. v. British Knights Int'l, Inc.,*
    No. 98 Civ. 8388, 1999 WL 813461 (S.D.N.Y. Oct. 8, 1999) ...................................7

*Reade v. Allied Trades Council,* ............................................................................10
    No. 04 Civ. 3542, 2005 U.S. Dist. LEXIS 29690, at *8-9 (S.D.N.Y,. Oct 7, 2005)

*Rodriguez by Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1999)...........................................................................12, 15

*Simon v. GE,*
    263 F.3d 176, 177-78 (2d Cir. 2001) ...................................................................11

*Singleton v. Abramson,*
    336 F.Supp. 754 (S.D.N.Y. 1971)..................................................................18, 19

*Toussaint v. JJ Weiser & Co.,*
    No. 04 Civ. 2592, 2005 WL 356834, at *6 (S.D.N.Y. Feb. 13, 2005) ....................11

## STATUTES AND REGULATIONS

28 U.S.C. § 1331..................................................................................................8, 11

28 U.S.C. § 2201..................................................................................................8, 10

Employee Retirement Income Security Act of 1974, *as amended*
    (ERISA) § 3(21), 29 U.S.C. § 1002(21)...............................................................19

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)....................................................20

ERISA § 502(a), 29 U.S.C. § 1132(a) ....................................................................11

ERISA § 4041A(c), 29 U.S.C. § 1341a(c) ................................................................5, 20

ERISA § 4203, 29 U.S.C. § 1383 ...........................................................................5

Labor Management Relations Act,
    (LMRA) § 302(c)(5), 29 U.S.C. § 186(c)(5)......................................................3, 8, 9

LMRA § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B) ......................................................15

LMRA § 302(e), 29 U.S.C. § 186(e) ......................................................................8, 9

## MISCELLANEOUS

US DOL Op. Letter No. 89-29A (Sept. 25, 1989).........................................................20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
LOCAL 100, TRANSPORT WORKERS   **:**
UNION, AFL-CIO; ROGER TOUSSAINT, as **:**
President of Local 100, Transport Workers  **:**
Union, AFL-CIO, and WAYNE BRYAN,    **:**

           Plaintiffs,      **:**    Civ. No.:  06 Civ. 4787 (RPP)
                        **:**
       - against -      **:**
                        **:**
BERNARD ROSEN, MARGARET      **:**
CONNOR, MARK PAGE, MARGE      **:**
HENNING and SUSAN KUPFERMAN, as **:**
Employer Trustees of the T.W.U.-New York **:**
City Private Bus Lines Pension Trust,   **:**
                        **:**
         Defendants.     **:**
-------------------------------------------------------- X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

### I.

### PRELIMINARY STATEMENT

      Defendants, the Employer Trustees of the Transport Workers Union-New York

City Private Bus Lines Pension Trust (hereafter referred to as the "Employer Trustees" and the

"Fund," respectively), respectfully submit this Memorandum of Law in Opposition to Plaintiffs'

Order To Show Cause For Preliminary Injunction And Temporary Restraining Order.  The Court

has no jurisdiction over the claims of Plaintiffs, Local 100, Transport Workers Union, AFL-CIO

(the "Union"), and its President.  Moreover, the request for injunctive relief must be denied

because the only Plaintiff properly before this Court, Wayne Bryan, can show neither irreparable

harm nor likelihood of success on the merits of his claim of breach of fiduciary duty.

      All of the Trustees of the Fund initiated a pending arbitration pursuant to the

Second Restated Trust Agreement (the "Trust Agreement") to resolve deadlocks between the

1

Fund's Trustees concerning merger of the Fund, a terminated plan due to the withdrawal of all of its contributing employers, into an on-going government pension plan maintained by the Metropolitan Transportation Authority (the "Merger"). Plaintiffs oppose the Merger and are seeking injunctive relief to prohibit the arbitration from continuing  Plaintiffs bring this action against the Employer Trustees, but fail to also name as defendants the Union Trustees who are participating in the arbitration. Plaintiffs essentially claim the Employer Trustees have exceeded their authority, but point to no provision of the Trust Agreement prohibiting the proposed Merger. The Trust Agreement grants the Trustees very broad authority, including the authority to "do all other acts that they consider necessary or appropriate to effectuate the purposes of the Fund and the Plans . . . ." The sole purpose of the Fund is to provide benefits for participants and their beneficiaries. In connection with this authority, the Trustees long ago had approved Section 14.15 of the Pension Plan which explicitly provides that the "Plan may be merged or consolidated with, or its assets or liabilities transferred in whole or in part to, another plan." Here, the Merger is in the best interest of the Fund's participants and beneficiaries and the Merger is sought in furtherance of the Employer Trustees' fiduciary duties. Moreover, the Arbitrator's authority is equally as broad as that of the Trustees. As the Arbitrator has not yet ruled on the initial question of arbitrability or on whether to effectuate the Merger, Plaintiffs' action is premature and speculative. Accordingly, Plaintiffs cannot meet the burden for preliminary injunctive relief.

## II.

## STATEMENT OF FACTS

### A.    Background

#### 1.    The Fund

The Fund is a jointly-administered trust fund, which sponsors an employee benefit plan that provides generous pension and other benefits to participants and beneficiaries.  See Gold Aff.[1] ¶ 2.  The Fund is administered in accordance with its Trust Agreement and Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (the "Act" or "Taft-Hartley").  Id.

The Fund's Trust Agreement provides that the Fund will be jointly managed by a ten (10) member Board of Trustees with five (5) Trustees appointed by the Union and five (5) Trustees appointed by the contributing employers that have collective bargaining agreements with the Union. Id. Exh. A. § 3.1.  The Trust Agreement was executed on September 28, 1999, by signature of four Union-appointed Trustees and four Employer-appointed Trustees.  Id. ¶ 4. No Union representative was a signatory to the Trust Agreement.

#### 2.    Authority of the Trustees

Section 3.1 of the Trust Agreement provides "[t]he Trustees are vested with all right, title, and interest in and to the Fund." Id. Exh. A.  Indeed, Section 10.1 gives the Trustees the ultimate authority - "[t]his Trust Agreement shall continue for such time as may be necessary to accomplish the purpose for which it was created but may be terminated at any time by the Trustees." Id. Exh. A. § 10.1.  The Trustees also have the power to take actions short of termination, including amending the Trust Agreement (Section 11.1), construing its terms

---

[1]    Reference is to the Affidavit of Scott A. Gold submitted herewith.

3

(Section 4.8(1)), and "[t]o do all other acts that they consider necessary or appropriate to effectuate the purposes of the Fund and the Plans . . . " Id. Exh. A. §§ 11.1, 4.8(1), and 4.8(9).

Moreover, the Pension Plan adopted by the Board of Trustees explicitly authorizes merger. Section 14.15 of the Pension Plan provides:

> "Merger Or Consolidation. The Plan may be merged or consolidated with, or its assets or liabilities transferred in whole or in part to, another plan which meets the requirements of Code Sections 401(a) and 501(a) only if each Participant would, if either the Plan or the other plan terminated immediately after the merger, consolidation or transfer, then receive a benefit which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer if the Plan then terminated." Id. Exh. B. § 14.15

### 3.   Voting and Deadlock Rules

All decisions made by the Fund's Trustees must be made by a majority vote of both Union Trustees and Employer Trustees. Id. Exh. A. § 3.7(3). In the event of a deadlock vote, the matter in dispute must be decided by the Impartial Chairman of the Local Private Transit Industry in New York City - one of three Rotating Arbitrators, including the instant Arbitrator, specified in a Resolution by the Trustees dated July 16, 2003. Id. Exh. A § 3.7(5). Section 3.7(5) of the Trust Agreement provides that the Impartial Chairman "shall, for the purpose of deciding the matter or dispute, be vested with full voting powers of a Trustee." Id.

## B.   The Proposed Merger

On April 19, 2004, Mayor Bloomberg and Governor Pataki publicly announced that they intended for the Metropolitan Transportation Authority ("MTA"), a public authority, to assume responsibility for operating the bus routes then being operated by seven private bus companies, including the three contributing employers to the Fund. Id. ¶ 2. Since at least August 2004, the Trustees of the Fund have been discussing merger of the Fund into a government pension plan. Id. ¶ 12. The three contributing employers, Queens Surface Corp.

("QSC"), Jamaica Buses, Inc. ("Jamaica") and Triboro Coach Corp. ("Triboro") also had been
negotiating with the Union about merging the Fund into the MTA Defined Benefit Pension Plan
("MTA Plan"). Id. ¶ 13. On February 27, 2005, New York City purchased the assets of QSC.
All of QSC's Union-represented employees were offered employment by MTA Bus, a subsidiary
of the MTA. Id. ¶ 14. As a result of the sale of its assets, QSC terminated the employment of all
its employees. Id. Pursuant to the Employee Retirement Income Security Act ("ERISA"), QSC
completely withdrew from the Fund. Id. The MTA, however, created a new article of the MTA
Plan which mirrored all the plan benefits of the Fund which became applicable to former QSC
employees. Id. ¶ 14. A similar sequence of events occurred when New York City acquired the
assets of Jamaica on January 30, 2006, and the assets of Triboro on February 20, 2006. Id. ¶ 15.

        As the private bus companies were no longer operating or employing employees,
these companies no longer had an obligation to contribute to the Fund. Id. ¶ 16. This "mass
withdrawal," as defined by Section 4203 of ERISA, 29 U.S.C. § 1383, terminated the Trust's
benefit plan by operation of law. Id. Following the mass withdrawal, there were substantial
questions as to the long-term financial viability of the Trust, as there were no longer employers
obligated to make contributions. See Page Aff. ¶ 3.[2] If the Fund is no longer able to pay the
promised benefits of $ 82 per year of service, participants and beneficiaries might only receive
from the Pension Benefit Guaranty Corporation the federally guaranteed $ 35.75 per year of
service. Id., ¶ 8. Should the Trust remain independent, there are substantial administrative and
legal fees that will be incurred, and the Trust remains subject to investment risk, as there is no
new stream of revenue to counterbalance investment losses. See Gold Aff. ¶ 16; Page Aff. ¶ 9.
Additionally, under Section 4041A(c) of ERISA, 29 U.S.C. § 1341a(c) upon a mass withdrawal,

---

[2]    Reference is to the Affidavit of Mark Page submitted herewith.

only "nonforfeitable" benefits can continue to be paid, resulting in a loss of certain disability and death benefits for Trust participants and beneficiaries. See Page Aff. ¶ 6. In short, there is a substantial risk that beneficiaries under the Plan will not receive their full pension benefits. Id., ¶¶ 5, 6.

        In contrast, the Merger with the MTA Plan offers numerous advantages. First, the MTA Plan is well funded, as it has a $ 9.3 billion expense budget, and the MTA regularly makes actuarially determined contributions to the Fund to ensure it is adequately funded. Id., ¶ 9. The MTA's fund is overseen by professional and independent investment and accounting firms. Id. Under the terms of the Merger, no participant or beneficiary would suffer any loss of benefits, and the various forfeited benefits that the Fund is currently unable to pay would once again be provided to the beneficiaries. Id., ¶¶ 5, 6. There is no guarantee that the MTA's offer to merge funds will remain an option in the future, as the Board of the MTA is appointed by the governor of the state, and following the November 2006 election, there is a risk that new MTA leadership may opt to revoke the offer. Id., ¶ 12.

        On March 2, 2006,[3] pursuant to the broad grant of authority to the Trustees under the Trust Agreement, including the power to terminate or amend the Trust Agreement, the Employer Trustees made a motion to take all actions necessary to effectuate the Merger, including to adopt the amendments proposed in August 2004 to amend the Trust Agreement and Pension Plan to explicitly authorize a merger into a government plan. See Gold Aff. ¶ 18; Page Aff. ¶ 4. The proposed merger provides that all of the assets and liabilities of the Fund be transferred to the MTA Plan and that the MTA Plan covering former employees of QSC, Jamaica and Triboro provide identical benefits to which they were eligible under the Fund's Pension Plan.

---

[3]   Plaintiffs do not, and have not, challenged the actions of the Trustees of the Fund when they unanimously voted on March 2 to terminate the 401(k) Plan, or the actions of the Trustees of the Health Fund when they unanimously voted on March 2 to terminate the Health Fund. See Gold Aff. ¶ 20.

<u>See</u> Gold Aff. ¶ 18.  The Union moved to table this motion, but the Trustees deadlocked on the

Union's motion. <u>Id.</u>  Then the five Employer Trustees voted in favor of the Merger and the five

Union Trustees voted to oppose the Merger. <u>Id.</u>

       The Union Trustees first initiated the deadlock rules from Section 3.7(5) of the

Trust Agreement and demanded arbitration to decide the deadlock of their motion to table the

motion on the Merger. <u>Id.</u>, ¶ 19.  The Employer Trustees then demanded arbitration pursuant to

the deadlock rules to decide the deadlock on the Merger. <u>Id.</u>  The Trustees agreed to consolidate

these deadlock motions before Arbitrator Jacqueline Drucker. <u>Id.</u>  As of this writing, two days of

arbitration hearings already have been conducted in this matter, and a third day is scheduled for

August 2, 2006. <u>Id.</u>, ¶ 21

       The Employer Trustees ask the Court to reject Plaintiffs' request for injunctive

relief and to permit the arbitration proceedings to continue.

**III.**

**ARGUMENT**

**THE COURT SHOULD DENY PLAINTIFFS' REQUEST
FOR A PRELIMINARY INJUNCTION**

**A.**    **This Court Has No Jurisdiction Over
    <u>The Claims of the Union and its President</u>**

       As an initial matter, the Union and its President, Roger Toussaint, lack standing to

seek judicial relief that affects an arbitration proceeding governed by an arbitration agreement to

which the Union itself is not a party.  This is a simple statement of black letter law that the Union

cannot contest. <u>Ametex Fabrics, Inc. v. Just In Materials, Inc.</u>, 140 F.3d 101, 110 (2d Cir. 1998)

(observing the "generic principle" that "breach of contract can only be asserted by a party in

privity of contract."); <u>see also</u> <u>Planet Footwear, S.A. v. British Knights Int'l, Inc.</u>, No. 98 Civ.

8388, 1999 WL 813461, at *2 (S.D.N.Y. Oct. 8, 1999) (non-party to an agreement lacks standing

7

to sue for its breach). The Trust Agreement was executed by the four Union Trustees and four Employer Trustees; no member or representative of the Union was a signatory to the executed agreement. The Trustees are not representatives of the Union and the applicable statutes make clear that the Trustees' only loyalty is to the Fund's participants and beneficiaries and not the Union. <u>N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc.</u>, 453 U.S. 322, 334, 101 S.Ct. 2789 (1981) ("The language and legislative history of § 302(c)(5) and ERISA therefore demonstrate that an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him."). Consequently, the alleged harms that the Union claims it will suffer should injunctive relief not be granted are of no moment; this Court does not have jurisdiction with respect to the Union's claims.

The Union and its President purport to invoke jurisdiction under three federal statutes: (i) Section 302(e) of the LMRA, 29 U.S.C. § 186(e); (ii) the Declaratory Judgment Act, 28 U.S.C §2201; and (iii) 28 U.S.C. § 1331, which provides for federal question jurisdiction. (Complaint ¶ 2). None of these three statutes, however, confers jurisdiction on this Court to decide the Union's claims or issue the injunction sought. The essential dispute here is over the interpretation of a document governing an ERISA pension plan. This interpretation may raise a federal question under ERISA, but the Union and its President do not - and could not - invoke ERISA as a basis for this Court's jurisdiction because they do not have standing to assert such jurisdiction.

1. **Directly Applicable Precedent of the U.S. Supreme Court Provides that LMRA § 302(E) Does Not Confer Jurisdiction Over the Union's Claims**

The Union and its President assert without elaboration that this Court has jurisdiction under Section 302(e) of the LMRA, 29 U.S.C. §186(e), to issue an injunction against

8

the Employer Trustees preventing the pending arbitration. Plaintiffs contend that arbitration of

the Merger is "beyond the scope of [LMRA] Section 302(c)(5)" (Plaintiffs' Memorandum, p. 11)[4]

and apparently invoke jurisdiction under Section 302(e) to redress the alleged violation. But the

Supreme Court has held that Section 302(e) of the LMRA does not allow a federal court to issue

injunctions against a trust fund or its trustees to enforce compliance with the conditions of

Section 302(c)(5) of the LMRA. Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S.

581, 587 (1993). The Demisay decision is controlling. Section 302(e) does not confer

jurisdiction on this court to issue an injunction.

In Demisay, the employer contributors to a multiemployer trust sought an

injunction pursuant to Section 302(e) of the LMRA compelling the trustees of the trust to

transfer assets from that trust to a new trust established by those employers. The employers

argued that absent the transfer, the trust fund would fail to meet certain of the conditions

prescribed by Section 302(c)(5).[5] The United States Supreme Court held that Section 302(e)

does not provide authority for a federal court to issue an injunction against a trust fund or its

trustees to enforce compliance with Section 302(c)(5). The Court said:

> "We hold today that § 302(e) does not provide authority for a
> federal court to issue injunctions against a trust fund or its trustees
> requiring the trust funds to be administered in the manner
> described in § 302(c)(5). By its unmistakable language, § 302(e)
> provides district courts with jurisdiction 'to restrain violations of
> this section.' A 'violation' of § 302 occurs when the substantive
> restrictions in §§ 302(a) and (b) are disobeyed, which happens, not
> when funds are administered by the trust fund, but when they are
> 'pa[id], len[t], or deliver[ed]' to the trust fund, § 302(a), or when
> they are 'receive[d], or accept[ed]' by the trust fund, or 'request[ed],

---

[4]   Reference is to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Application for a Temporary
Restraining Order and Motion for a Preliminary Injunction.

[5]   In Demisay, the conditions at issue were those that required that the trust fund be established for the sole and
exclusive benefit of the employees, and that the payments be "held in trust for the purpose of paying" employee
benefits.

> or demand[ed]' for the trust fund, § 302(b)(1). And the exception
> to violation set forth in paragraph c(5) relates, not to the purpose
> for which the trust fund is in fact used (an unrestricted fund that
> happens to be used 'for the sole and exclusive benefit of the
> employees' does not qualify); but rather to the purpose for which
> the trust fund is 'established,' § 302(c)(5), and for which the
> payments are 'held in trust,' § 302(c)(5)(A). The trustees' failure to
> *comply* with these latter purposes may be a breach of their
> contractual or fiduciary obligations and may subject them to suit
> for such breach; but it is no violation of §302." [footnotes omitted,
> italics in original.]

Demisay, 508 U.S. at 587-588.

Here, no violation of the substantive provision of § 302(a) or § 302(b) is alleged.

The Union and its President assert only that the arbitration is "beyond the scope of Section

302(c)(5)" and that it is in violation of the trust agreement. This bare allegation fails to invoke

jurisdiction. See Id.; see also Reade v. Allied Trades Council, No. 04 Civ. 3542, 2005 U.S. Dist.

LEXIS 29690, at *8-9 (S.D.N.Y. Oct. 7, 2005) (Section 302(c)(5) provides no authority for a

federal court to act with respect to trustees' actions after a fund has been established). Under

Demisay, this Court has no jurisdiction under Section 302(e) to address the Union's claim.

2.    **The Declaratory Judgment Act Does
      Not Confer Jurisdiction Upon this Court**

It is axiomatic that the Declaratory Judgment Act (28 U.S.C. § 2201) does not

expand federal jurisdiction and that a declaratory judgment action must therefore have an

independent basis for subject matter jurisdiction. See, e.g., Albradco, Inc. v. Bevona, 982 F.2d

82, 85 (2d Cir. 1992); In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001, 2005 WL

1162448, at *3 (S.D.N.Y. 2005). The Union and its President cannot rely on the Declaratory

Judgment Act, without more, to invoke this Court's jurisdiction.

3.    **The Only Federal Question that Exists Arises Under ERISA and
       Neither the Union Nor Its President Has Standing to Assert It**

The Union and its President baldly assert that there is a federal question that this

Court has jurisdiction to resolve.  They do not indicate what federal question is raised.  This is

understandable because the only federal question that is arguably at issue is the proper

interpretation of a document governing an ERISA plan.  ERISA § 502(a), 29 U.S.C. § 1132(a)

permits only "a participant, beneficiary or fiduciary" to bring a civil action to enjoin a violation

of ERISA or a plan.  The Union and its President have no standing to raise such a question.

Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27, 103 S. Ct. 2841 (1983)

("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide

anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a

declaratory judgment on the issues in this case. A suit for similar relief by some other party does

not 'arise under' that provision.")  The Second Circuit has interpreted applicable Supreme Court

precedent to "permit ERISA suits, including declaratory judgment actions, only by plaintiffs

specified in ERISA § 502(a)…"  Albradco, 982 F.2d at 85, citing Metro. Life Ins. Co. v. Taylor,

481 U.S. 58 (1987) (emphasis added); see also Simon v. GE, 263 F.3d 176, 177-78 (2d Cir.

2001) (same).

Neither the Union nor its President is a "participant, beneficiary or fiduciary."

Indeed, in 2005, this Court dismissed an action brought by the Union and its President because

neither of these are persons authorized by ERISA § 502(a) to bring an action.  See Toussaint v.

JJ Weiser & Co., No. 04 Civ. 2592, 2005 WL 356834, at *6 (S.D.N.Y. Feb. 13, 2005).

Accordingly, 28 U.S.C. § 1331 does not confer jurisdiction on this Court over any claim raised

by Local 100 or Toussaint.

11

**B.    The Governing Legal Standard Favors Defendants**

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997) (emphasis and citation omitted). District courts may only grant preliminary injunctions upon a showing by the moving party of both irreparable harm and either likelihood of success on the merits or "that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005) (internal citations omitted). Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999) (internal citation and quotation omitted). The party seeking a preliminary injunction must show that the injury they will suffer is neither remote nor speculative. Id., at 234.

**C.    Plaintiffs Have Failed to Demonstrate Irreparable Harm**

All of Plaintiffs' asserted examples of irreparable harm are remote and speculative. If the Union Trustees are correct in their arguments to the Arbitrator, the Arbitrator might rule against the Merger. Such a ruling by the Arbitrator would obviate all of Plaintiff's concerns.

The deadlocks already have been submitted to arbitration. As the Trust Agreement and Taft-Hartley make clear, the Arbitrator is a fiduciary who assumes the role of a trustee for purposes of resolving the deadlock. Under well-established principles of law, a fiduciary's decision can only be challenged against an arbitrary and capricious standard. A de

12

novo review by courts of a fiduciary's decision is not appropriate where a the fiduciary has

authority under the plan "to determine eligibility for benefits or to construe the terms of the

plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114 (1989).

       Here, where the arbitration process has begun but the hearing has not concluded

nor has any decision been issued, there is no basis for this Court to involve itself in this dispute.

Should the Arbitrator, in her fiduciary capacity, elect to vote in favor of the Merger, then legal

recourse remains for Bryan and other participants well down the road (at which point they would

be obligated to meet the arbitrary and capricious standard set forth to challenge fiduciaries'

determinations of a plan's terms). At this point, there is absolutely no risk of irreparable harm to

any party; and an arbitration proceeding that all Trustees are participating in must be permitted to

continue.

       Plaintiffs allege that if the arbitration proceeds, the Fund -- not Plaintiffs --will

suffer irreparable harm in expending time and resources to arbitrate a matter that is not

arbitrable. This argument is a red herring as the costs of arbitration would be easily quantifiable

and could be pursued as damages in a breach of fiduciary action against all the Trustees, both

Employer and Union Trustees, as well as the Arbitrator. Plaintiffs rely on the Second Circuit's

decision in Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations, which held that

where a district court determined that a dispute was not arbitrable, forcing a party to then expend

resources arbitrating the dispute could constitute irreparable harm. (Plaintiffs' Memorandum,

pps. 6-7, citing 107 F.3d 979, 985 (2d Cir. 1997)). This sleight of hand begs the Court to ignore

clear, unambiguous Second Circuit law that leaves no doubt as to the arbitrability of the Merger.

Maryland Casualty only has bearing on this case if this Court concludes that the Merger is

clearly not arbitrable. As discussed in greater detail below, this is simply not a burden Plaintiffs can meet.

Additionally, Plaintiffs seek to bolster their irreparable harm claim by pointing to the loss of control that Union-appointed Trustees would have if the arbitrator approves the Merger. (Plaintiffs' Memorandum, p. 7). This argument also must fail. Union influence on the Trust is not the paramount issue. The sole purpose of the Fund is to provide benefits for participants and their beneficiaries. See Gold Aff. Exh. A. § 1.2. The Employer Trustees are seeking Merger of a terminated Plan to protect these benefits - certain of which have already been forfeited by law and others that may be at risk by maintenance of a terminated plan without any contributing employers. Plaintiffs' claim of loss of Union influence thus appears to be motivated more by protecting the Union's power than genuine concern.

Even assuming, arguendo, that the Union does have standing in this action (see supra at III-B), the fact that the Union-appointed Trustees might have their role eliminated does not constitute irreparable harm to the Union. Two scenarios implicit in two governing documents demonstrate that the Union-appointed Trustees possessed no guarantee of a perennial role in administering the Trust. The Trust Agreement itself contemplates that the Trustees may decide to terminate the Fund. See Gold Aff. Exh. A. § 10.1. By including such authority over the ultimate disposition of the Fund in the Trust Agreement, there is an implicit understanding that the Union Trustees could at some point lose their influence. Moreover, merger is essentially no different than termination of the Plan; merger simply provides a new destination of the Fund's liability and assets following termination. Second, the Pension Plan, adopted by the Trustees, explicitly provides, since at least 2001 when it was restated, that the Plan can be merged or consolidated so long as each participants' benefits are not diminished.

14

The irreparable harm burden Plaintiffs must bear cannot be satisfied by pointing to speculative harm.  See Rodriguez by Rodriguez, 175 F.3d at 233-34.  Inherent in Plaintiffs' claims is that having the Trust administered by the MTA might impact benefits.  This, however, is nothing more than blatant speculation.  Indeed, as discussed infra at III-E, it is simply wrong.  At a minimum, there is a deadlock among the Trustees as to what is best for the Trust and, to put things charitably, this difference of opinion falls well short of meriting the "extraordinary and drastic" relief Plaintiffs now seek.

Congress specifically provided an arbitral forum in which deadlocks of this nature were to be resolved, and this Court should not accept Plaintiffs' hypothetical arguments about irreparable harm.  Plaintiffs have not demonstrated that but for the issuance of this declaratory relief, they will suffer irreparable harm, and for this reason, Plaintiffs' request for injunctive relief should be denied.

**D.    Plaintiffs Have No Likelihood of Success on the Merits as the Dispute is Clearly Arbitrable**

In an attempt to satisfy the second prong for a preliminary injunction, Plaintiffs argue that they have a likelihood of succeeding on the merits of their claim.  Unambiguous Second Circuit law proves this to be false and therefore demands that the requested relief be denied.

**1.    Second Circuit Law Takes a Broad View of What Disputes Should be Arbitrated**

Pursuant to Section 302(c)(5)(B) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5)(B), a Taft-Hartley Fund must require, in a written agreement, that "in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute . . ."  Here, the

15

Trust Agreement provides broad authority to the Arbitrator, who, for the purpose of resolving deadlock disputes, is "vested with full voting powers of a Trustee." <u>See</u> Gold Aff. Exh. A. § 3.7(5).

Courts in the Second Circuit have held, in the multiemployer context, that "administrative functions" quite simply include any functions that the Trustees have the power to perform under the Trust Agreement. <u>See</u>, <u>e.g.</u>, <u>Mahoney v. Fisher</u>, 277 F.2d 5 (2d Cir. 1960); <u>Gold v. Pennachio</u>, 757 F. Supp. 13, 16 (S.D.N.Y. 1991) (administrative functions cover anything the trustees are authorized to do under the trust agreement). "In sum, given the presumption in favor of arbitration, the instant dispute must be referred to arbitration unless it can be said 'with positive assurance' that the dispute does not fall within the scope of the arbitration clause." <u>Bueno</u>, 2002 WL 31106342, at *4, <u>citing</u> <u>AT&T Tech., Inc. v. Comm. Workers of Am.</u>, 475 U.S. 643, 650, 106 S.Ct. 1415 (1986). A deadlock "dispute is arbitrable unless the Trustees do not even 'arguably' have the power to implement the [proposal at issue]." <u>Bueno</u>, 2002 WL 31106342 at *4, <u>citing</u> <u>Barrett v. Miller</u>, 276 F.2d 429, 433 (2d Cir. 1960).

Courts in other circuits concur. <u>See</u>, <u>e.g.</u>, <u>Hauskins v. Stratton</u>, 721 F.2d 535, 537 (5th Cir. 1983) (where trust agreement granted the trustees the authority to establish a plan of benefits, proposal to increase benefits is an issue of plan administration, and a trustee deadlock on the issue was subject to arbitration under the trust); <u>Hawkins v. Bennett</u>, 704 F.2d 1157, 1160-61 (9th Cir. 1982) (trustees authorized by the trust agreement to increase or decrease benefits acted in an administrative capacity in determining whether to increase benefits, and a trustee deadlock on that issue was subject to arbitration under the trust). Accordingly, so long as the Trustees even <u>arguably</u> had the authority to effectuate a merger of the Fund, a deadlock concerning this issue must be arbitrated.

   2.     **The Trustees of the Fund Have the Authority to Merge the<br>        <u>Fund and the Instant Question is Properly Before the Arbitrator</u>**

The Trustees deadlocked on the Merger.  The Trust Agreement provides the

Trustees with the authority to terminate the trust and to amend the Trust Agreement.  <u>See</u> Gold

Aff. Exh. A. § § 10.1 and 11.1.  The Pension Plan at Section 14.15 expressly permits the merger

of the Plan with another plan so long as benefits are not compromised.  <u>See</u> Gold Aff. Exh. B.

The authority provided by the Trust Agreement is the sole determinant of whether an issue is

subject to mandatory arbitration.  Here, where the Trustees had the power to eliminate the Trust

altogether or to amend the Trust in any way that did not affect the benefits to participants, the

Trustees' ability to execute the Merger clearly is subsumed within these broad mandates of

authority.  Where the Trustees had authority to act, under <u>Mahoney</u>, a deadlock over such action

is arbitrable.

        To contest this, Plaintiffs rely on cases where the trust agreements at issue were

substantially different.  For example, whereas Plaintiffs describe <u>Bueno</u> as "almost directly on

point," the language in key clauses of the trust agreement in that case was completely different

than the language used in the Trust Agreement at issue in the instant dispute.  (Cf. Plaintiff's

Memorandum, p. 9).  In <u>Bueno</u>, a deadlock arose over whether a portion of a pension benefit

fund could be spun off into a separate cash benefit plan.  The trust agreement contained the

requisite language providing for the arbitrability of deadlocks, but significantly limited the

arbitrator's authority.  The relevant language quoted by the court stated as follows: "the arbitrator

shall *not* have the power or authority to change or modify the basic provisions of this Trust

Agreement or any applicable collective bargaining agreement."  <u>Bueno</u>, 2002 WL 31106342 at

*2 (emphasis supplied by the court).  This clause is precisely what the <u>Bueno</u> court seized upon

in finding that the spin-off proposal could not be submitted to arbitration.  Looking at the four

17

corners of the trust agreement at issue in the case, <u>Bueno</u> adhered to a literal reading of the arbitration clause and took seriously the parties' intention to limit the arbitrator's authority.  The <u>Bueno</u> analysis is irrelevant to the instant dispute, as the Trust Agreement contains no such clause limiting the scope of the Arbitrator's authority.  As discussed above, the Trustees have the power to effectuate a merger of the Fund, and unlike in <u>Bueno</u>, no special restrictions are placed upon the Arbitrator's authority in the Trust Agreement.  To the contrary, pursuant to the terms of the Trust Agreement, Arbitrator Drucker has full power as a Trustee to decide the deadlocks on the Merger.

Plaintiffs also rely on an out-of-Circuit case, <u>Hodges v. Holzer</u>, for support that a merger of trust funds is not a matter of fund administration.  (Plaintiffs' Memorandum, p. 10).  In <u>Hodges</u>, the trust agreement did provide for mergers of the fund, but only upon approval of the trustees <u>and</u> the approval of the union and employers' association.  707 F. Supp. 232, 233-34. (M.D. La. 1998).  As the unions' approval also was required to execute the merger, the *Hodges* court found that the trustees lacked authority to take such action on their own.  <u>Hodges</u>, however, offers no support to plaintiffs when the broad grants of authority to the Trustees in the instant matter is compared to the trust agreement restrictions applicable in <u>Hodges</u>.

Plaintiffs ignore the fact that all of the case law in this area turns exclusively on the language of the trust agreements.  For example, in <u>Singleton v. Abramson</u>, the court was asked to appoint an arbitrator to resolve a deadlock concerning amendment of the trust agreement itself.  336 F. Supp. 754 (S.D.N.Y. 1971).  The union and employer trustees arrived at an impasse over whether to amend the procedure in the trust agreement by which vacancies on the board of trustees were to be filled.  Noting that the trust agreement itself permitted amendment by the trustees, the court held that "the issue of amendment is within the powers of

18

the Trustees and is a deadlock as to Fund administration." <u>Singleton</u>, 336 F. Supp. at 758. Therefore, the court found that deadlock regarding amendment was properly submitted to arbitration. <u>Id</u>. A thorough review of the case law demonstrates that the deadlock issue does not determine the result in these cases; rather, the authority of the trustees as contained within the trust agreement is the lone consideration.

A dispute is arbitrable unless the Trustees "do not even arguably" have the authority to take the action at issue before the arbitrator. <u>Bueno</u> 2002 WL 31106342, at *4 (internal quotation and citations omitted). Here, the Trustees - at a bare minimum, arguably - have the authority to execute the Merger, and this is the ultimate and decisive inquiry. Thus, Plaintiffs have failed to demonstrate a probability of success on the merits and the Plaintiff's request for injunctive relief must be denied.

**E.      The Proposed Merger Does Not Constitute a Breach**
**of the Employer Trustees' Fiduciary Duties Under ERISA**

Plaintiff Wayne Bryan ("Bryan") alleges that the Employer Trustees have breached their fiduciary duties by exceeding their authority under the Trust Agreement. (Plaintiffs' Memorandum, pps. 11-12). As the above discussion makes clear, the Trustees have taken no action not specifically contemplated by the Trust Agreement as an act the Trustees alone have the power to effectuate. Assuming, <u>arguendo</u>, that the Trustees' authority to effectuate a Merger can be questioned (in which case the matter would still properly be submitted to arbitration), the Employer Trustees are appropriately exercising their fiduciary duties by acting in the best interests of the participants and beneficiaries.

When a trustee exercises discretionary authority or control in the administration or management of an employee benefits plan, that trustee is acting in a fiduciary capacity. *See* Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The United States Department of Labor

19

("DOL") has acknowledged previously that trustees act in their fiduciary capacity in deciding whether or not to merge. See, e.g., DOL Op. Letter No. 89-29A (Sept. 25, 1989) (discussing what the "fiduciaries of each multiemployer plan" should consider in deliberating a merger). An analysis of the Merger requires consideration of current conditions and long-term financial security of the Fund's participants and beneficiaries. Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), requires the Employer Trustees to solely advance the interest of the participants and beneficiaries of the Plan.

A brief recitation of the rationale for the Merger leaves no doubt that the Employer Trustees are both acting within their capacity as fiduciaries and their actions are supported by the interests of the participants and beneficiaries. First and foremost, under the proposed Merger, no individual's benefits would decrease. Thus, Bryan's claim that the interests of participants and beneficiaries would be harmed is patently wrong.[6]

Participants in a terminated plan are in an uncertain position and cannot be secure that they will receive all the benefits they expect to receive. In addition, Section 4041A(c) of ERISA, 29 U.S.C. § 1341a(c), provides that the plan sponsor of a plan terminated by mass withdrawal shall limit the payment of benefits to benefits that are "nonforeitable" under the plan as of the date of termination. Certain benefits provided under the Pension Plan are not "nonforfeitable," or in other words have already been forfeited as a matter of law. For example, the disability pension (Section 4.04), the in-service lump-sum death benefit (which includes

---

[6]    An underlying weakness of Plaintiffs' claims is illustrated by Plaintiffs' Complaint at ¶ 26, which suggests that authority to decide whether the Merger should occur is reserved to the Fund's settlors - the Union and the contributing employers. As things currently stand, there is no longer a contributing employer to the Plan. As there is no longer an employer, the original settlors are not available to collectively bargain about the future of the Fund. Indeed, the Department of Labor has recognized that Trustees of a multiemployer benefit plan may properly engage in activities that, while settlor activities in the context of a single-employer plan, might be fiduciary activities in a multiemployer context. This could "result in the board of trustees exercising discretion as fiduciaries in the management or administration of a plan or its assets when undertaking the activities." See DOL Field Assistance Bulletin 2002-2 (Nov. 4, 2002).

payment on death or on loss of a hand, foot or sight) (Section 6.06), the post-retirement lump-sum death benefit (Section 6.07), the dependent child's pre-retirement death benefit (Section 6.08), and the dependent child's post-retirement death benefit (Section 6.09) have all now been forfeited and cannot be paid by the Fund.  If the Merger is approved, however, then these benefits will be paid.  See Gold Aff. Exh. B.

There is a very likely possibility that the Fund is underfunded by at least eighty million dollars.  Plan assets will continue to be subject to investment risk.  If there are losses, there is no contributing employer who can be called upon to make contributions to offset those losses.  Thus, there looms the chance that this terminated Fund will no longer be able to pay the promised benefits of $ 82 per year of service, in which case participants and beneficiaries might only receive from the Pension Benefit Guaranty Corporation the federally guaranteed $ 35.75 per year of service.  Also, by maintaining the previous plan and declining to proceed with the Merger into the MTA Plan, the Fund will continue to have to pay administrative expenses that will further deplete its resources with no stream of new revenue.  There is a risk that by delaying the Merger, following the November 2006 gubernatorial race, the leadership of the state-appointed MTA Board may change and the offer of the Merger may be revoked, thereby foreclosing the ability of beneficiaries to receive the benefits they are owed.  In no way can these additional expenses and risks be construed to counsel against the Merger of the funds.

Taken together, all of these factors dictate that halting the Merger is, at a minimum, not in the best interest of the participants and beneficiaries, and quite possibly could seriously reduce the benefits to which they otherwise would be entitled.  For these reasons, the Employer Trustees' support of the Merger and their decision to initiate arbitration was clearly

made with their role as fiduciaries to the Plan in mind.  Bryan has demonstrated no breach of

fiduciary duty on the part of the Employer Trustees.[7]

---

[7]     In fact, if any breach of fiduciary duty in the instant dispute has occurred, it has been committed by the Union Trustees, not the Employer Trustees.  The Union Trustees' opposition to a merger clearly beneficial to the participants and beneficiaries can only be explained by reference to the Union's interests as expressed in this action.  The Union Trustees' considerations of the Union's interests constitute a violation of their fiduciary duties.  *See* N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc., 453 U.S. 322, 334, 101 S.Ct. 2789 (1981) (holding that an employee benefit fund trustee's fiduciary duty is owed to the trust beneficiaries and *not* to the party that appointed the trustee) (emphasis added).

## IV.

## CONCLUSION

For the foregoing reasons, the Employer Trustees respectfully request that the

Court deny Plaintiffs' request for injunctive relief.  Arbitration is the appropriate forum to resolve

the deadlocks.

Dated: New York, New York
      June 27, 2006

SCHULTE ROTH & ZABEL LLP

By: _____
    Ronald E. Richman (RR9815)
    Mark E. Brossman (MB 4654)
    Scott A. Gold (SG 3024)

919 Third Avenue
New York, New York  10022
(212) 756-2000

Attorneys for Defendants