# BROACH & STULBERG, LLP
ATTORNEYS AT LAW

JUDITH P. BROACH*
ROBERT B. STULBERG°
DAVID C. SAPP, JR.ᐃ

AMY F. SHULMAN⁰

OF COUNSEL
IRA CURE▽

* NY, CA BARS
° NY, DC BARS
▽ NY, NJ BARS
ᐃ NY, NJ, FL BARS
⁰ NY, MA, DC BARS

ONE PENN PLAZA
SUITE 2016
NEW YORK, NEW YORK 10119
(212) 268-1000
FAX (212) 947-6010

NEW JERSEY OFFICE
ONE GATEWAY CENTER
SUITE 2600
NEWARK, NJ 07102
(973) 456-7021
FAX (973) 622-3423



July 2, 2007

**VIA FACSIMILE**

Honorable Robert P. Patterson
Unites States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    Local 100 Transport Workers Union, et al. v. Bernard Rosen, et al.,
            06 Cir. 4787 (RPP)

Dear Judge Patterson:

      We represent the plaintiffs, Local 100, Transport Workers Union, AFL-CIO ("the Union"), Roger Toussaint as President of Local 100, Transport Workers Union, AFL-CIO ("Toussaint") and Wayne Bryan ("Bryan"), in the above-referenced action. We submit this letter-brief in response to "Defendants' Supplemental Memorandum of Law in Opposition to Plaintiffs' Order to Show Cause for Preliminary Injunction and Temporary Restraining Order," filed with the Court on June 25, 2007 ("Supplemental Memorandum"). The exclusive issue discussed in the Supplemental Memorandum, and this letter-brief, is the Court's jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to issue a preliminary injunction in favor of plaintiffs.[1]

      As is more fully set forth in the moving papers, plaintiffs seek to enjoin the Employer Trustees of the TWU - New York City Private Bus Lines Pension Trust ("the Trust") from continuing to arbitrate the issue of merging the Trust with a pension plan maintained by the

---

[1] Plaintiffs contend that the Court has jurisdiction to issue the injunction they seek pursuant to Section 302(e) of the LMRA, 29 U.S.C. § 186(e), and pursuant to Section 502 of ERISA, 29 U.S.C. § 132.

Honorable Robert P. Patterson
July 2, 2007
Page 2

Metropolitan Transportation Authority.

Initially, it should be noted that defendants have made a fundamental factual error. Defendants argue, at Section A of the Supplemental Memorandum, that: "The Trust Agreement was executed by four Union Trustees and four Employer Trustees; neither the Union nor any Employer was a signatory to the executed agreement." This statement refers, however, to the Second Restated Trust Agreement, not the original Trust Agreement establishing the Trust. The original Trust Agreement was a contract among the Union, the contributing employers and the original trustees. The Second Restated Trust Agreement specifically references the original Trust Agreement and is merely an amendment thereof. Defendants' claim that the Union was not a party to the Trust Agreement is, therefore, simply not true.

The original Trust Agreement (annexed hereto as Exhibit A) states that:

THIS AGREEMENT and DECLARATION OF TRUST is executed the 21st day of November, 1963, by and between LOCAL 100, TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, and TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, hereinafter referred to as "Union," and QUEENS TRANSIT CORP., STEINWAY TRANSIT CORP., TRIBORO COACH CORP., JAMAICA BUSES, INC. and AVENUE B & EAST BROADWAY TRANSIT CORP., hereinafter jointly referred to as the "Employers," and the designated "Trustees" as provided herein.

Moreover, as the signature page attests, the settlors of the Trust signed in their capacities as officers of their respective entities, whether as officers of their Union or of the employers. The Trust Agreement is, therefore, a contract between an "employer and a labor organization" cognizable under Section 301 of the LMRA, 29 U.S.C. § 185. See, Savoretti v. Hotel and Restaurant Employers and Bartenders International Union Pension Trust, 470 F. Supp. 128, 129 (S.D.N.Y. 1979), citing Alvares v. Erickson, 514 F2d. 156, 161 (9th Cir. 1975).

Section 301(a) permits suits to be brought in United States District Courts "for violations of contracts between an employer and a labor organization ..., or between any such labor organizations." (Emphasis supplied). The statute, by its terms, is not limited to collective bargaining agreements. As the Supreme Court noted in Schneider Moving & Storage Company v. Robbinns, 466 US 364 (1984), "Section 301(a) of the LMRA provides a federal forum for suits to enforce labor contracts including pension and welfare fund agreements." Id. at 366 n.2. (Emphasis supplied). The instant Trust Agreement, as restated, is precisely the kind of agreement between a labor organization and employers that the Court contemplated in Schneider Moving & Storage.

In arguing that Section 301 jurisdiction is solely limited to collective bargaining

Honorable Robert P. Patterson
July 2, 2007
Page 3

agreements, defendants read too much into two unreported cases, Cement & Concrete Workers District Council Welfare Fund v. Atlas Concrete Construction Corp., 2007 WL 526621 (S.D.N.Y.) and Duane Reade v. Allied Trades Council, 2005 WL 3038695 (S.D.N.Y.). In both cases, the Courts merely upheld the proposition that, in order for a court to have jurisdiction of a Section 301 action, the parties to the lawsuit must be parties to a labor agreement. In the instant case, plaintiffs have demonstrated that the Union and the employers, as parties to the Trust Agreement, are parties to an agreement cognizable under Section 301.

Defendants also attempt to restrict Schneider by arguing that its holding should be limited to collection actions. Nothing in Schneider limits Section 301 jurisdiction in cases involving pension and welfare funds to collection actions. The cases relied upon by defendants for this proposition, MI Installers and Furniture Service, Inc. v. The New York City District Council of Carpenters Pension Fund, 476 F. Supp. 2d. 387 (S.D.N.Y. 2007) and Local 8A-28A Welfare Fund and 401(k) Retirement Funds v. Milland Group Inc., 2004 WL 305 729 (S.D.N.Y. 2004) involved employers who were not signatories to a collective bargaining agreement or any other labor agreement. Because the Union, the employers, and the trustees were all parties to the Trust Agreement, these cases are inapposite.

In conclusion, this Court has jurisdiction under Section 301 to issue the injunction requested by the Union.

Respectfully submitted,

BROACH & STULBERG, LLP

By: _____
Judith P. Broach (JB 4041)
Ira Cure (IC 7121)

JPB:lf
cc:     Ronald Richman, Esq.
        Mark Brossman, Esq.
        Scott Gold, Esq.
        Max Garfield, Esq.    (via e-mail)
        Mr. Roger Toussaint
        Mr. Ed Watt
        Walter Meginniss, Esq.
        Susan Jennik, Esq.

EXHIBIT "A"

TRANSPORT WORKERS UNION-NEW YORK CITY PRIVATE
BUS LINES

PENSION TRUST AGREEMENT

THIS AGREEMENT and DECLARATION OF TRUST is executed the ᵧ/ᵧ day of ᴺᵒᵛᵉᵐᵇᵉʳ , 1963 , by and between LOCAL 100, TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, and TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, hereinafter referred to as "Union," and QUEENS TRANSIT CORP., STEINWAY TRANSIT CORP., TRIBORO COACH CORP., JAMAICA BUSES, INC. and AVENUE B & EAST BROADWAY TRANSIT CORP., hereinafter jointly referred to as the "Employers," and the designated "Trustees" as provided herein.

W I T N E S S E T H :

WHEREAS, the Union and the Employers have separately and previously agreed in collective bargaining agreements to create a Trust to provide pension benefits for the employees covered by said agreements for whom the Union is the duly recognized collective bargaining agent; and

WHEREAS, the Employers believe that the establishment of the Pension Plan and Trust will have a stabilizing effect upon their employees and encourage continued service on the part of such employees; and

WHEREAS, it is intended by the parties that such Trust qualify as a qualified trust under the applicable sections of the Internal Revenue Code; and

WHEREAS, it is the purpose of this Trust Agreement and Declaration of Trust to carry out, under the terms and conditions hereinafter set forth, the aforesaid provisions and purposes for the benefit of such employees; and

WHEREAS, the Trustees signatory hereto and designated pursuant to the provisions of this instrument have agreed faithfully to administer this Trust:

NOW, THEREFORE, in consideration of the promises and the mutual covenants herein contained, the parties hereto agree as follows:

Section 1. Definition of Terms

a. "Trust" shall mean the Trust hereby created, to be known as the TRANSPORT WORKERS UNION-NEW YORK CITY PRIVATE BUS LINES PENSION TRUST.

b. "Fund" shall mean the pension trust maintained by the Trustees pursuant to this Trust Agreement.

c. "Union" shall mean Local 100, Transport Workers Union of America, AFL-CIO, and Transport Workers Union of America, AFL-CIO.

d. "Plan" shall mean the plan of benefits provided for by the pension plan agreement executed by the above-named parties on the ᵧ/ᵧ day of ᴺᵒᵛᵉᵐᵇᵉʳ , 1963 .

e. "Trustees" shall mean the ten (10) persons appointed, as hereinafter provided, to administer the Trust.

f. "Employee" shall mean any employee of any one of the Employers covered by a collective bargaining agreement between his Employer and the Union, and whose date of birth was on or after December 1, 1900.

g. "Participant" shall mean any employee who has made a contribution to the Fund.

h. "Secretary" shall mean the Secretary so appointed by the Trustees, as hereinafter provided.

i. "Treasurer" shall mean the Treasurer so elected by the Trustees, as hereinafter provided.

j. "Employer" and "Employers" shall mean, for the period December 1, 1960 to November 30, 1961, each and all, respectively, of the Employers who are parties to this Trust Agreement and thereafter shall mean each and all of such employers, respectively, who, in a collective bargaining agreement with the Union, agree to continue to make contributions to the Fund.

Section 2. Creation of Fund

a. There is hereby created and established a Fund for the purpose of providing pension benefits for participants qualified for such benefits and in accordance with the provisions of the Plan.

b. The Fund shall consist of the following:

(1) Contributions made to the Fund by the Employer as provided for under the provisions of the Plan.

(2) Contributions made to the Fund by the employees as provided for under the provisions of the Plan.

(3) The investments made by the Trustees of any portion of the Fund and all income therefrom or return of principal thereon.

(4) All monies or property received by the Trustees from any source whatsoever, whether or not such source shall have been specifically enumerated before but, if such source shall be other than one enumerated above, the Trustees may impose such conditions and restrictions upon the acceptance of such monies or property as they may deem necessary or advisable.

Section 3. Establishment of Plan

The Fund, as hereinabove described under Section 2, shall be received and held by the Trustees for the uses, purposes and trusts provided in this Trust Agreement and in the Plan adopted simultaneously herewith. The individual Trustees signatory to this Agreement, for themselves and their successors in office appointed as hereinafter provided, jointly and severally covenant and agree that they will receive, hold and pay out all

-2-

monies and other property comprising the Fund, subject to and in accordance with the provisions of this Trust Agreement and Plan.

Section 4. **Eligibility for Pension**

To be eligible to receive a pension, an employee shall be required to make application in the form specified by the Trustees and shall be required to meet the standards of eligibility prescribed by the Plan on the date of such application.

Section 5. **Trustees - Appointment, Removal and Replacement**

a. The Trust shall be administered by the Trustees who shall be ten (10) in number, five (5) of whom shall be designated in writing by the Union, and five (5) designated in writing by the Employers, each Employer to designate one (1) Trustee.

b. Each original and each successor Trustee shall serve until his death, his removal, or his resignation in writing filed with the Secretary and with each of the other Trustees.

c. The Union may at any time and at will remove any Trustee designated by it by serving written notice of such removal upon such Trustee, the Secretary, each of the other Trustees, and upon the Employers.

d. Each of the Employers may at any time and at will remove any Trustee designated by it by serving written notice of such removal upon such Trustee, the Secretary, each of the other Trustees, and upon the Union.

e. Upon the death, removal, or resignation of any Trustee designated by the Union, the Union shall immediately designate a successor Trustee by written notice to the Secretary, to each other Trustee, and to the Employers.

f. Upon the death, removal or resignation of any Trustee designated by one of the Employers, such Employer shall immediately designate a successor Trustee by written notice to the Secretary, to each other Trustee, and to the Union.

g. Should a vacancy or vacancies exist among the Trustees for a period of thirty (30) days or more because of the failure or refusal either of the Union or of the Employers to fill such vacancy or vacancies, then at the written request either of the Union or of the Employers on five (5) days' written notice to the other of such request, the Impartial Chairman of the Local Transit Industry in New York City shall be empowered to appoint a Trustee, or Trustees, to fill such vacancy or vacancies. A Trustee so appointed shall be deemed to be the appointee of the party which failed to fill the vacancy to which such Trustee was appointed and shall not be subject to removal except by the Impartial Chairman for good cause shown and, if so removed, his successor shall be appointed by the Impartial Chairman.

-3-

h. Neither vacancy nor vacancies in the Trusteeships, nor the absence of any Trustee, shall impair the power of the remaining or present Trustees to administer the affairs of this Trust.

Section 6. Trustees

a. General Powers

(1) From the monies and other properties in the Trust, to pay or provide for the payment of all reasonable and necessary expenses for securing any ruling from any Federal or State governmental agency in connection herewith, collecting and enforcing contributions to the Trust, protecting and investing the monies received, and administering the business and affairs of the Trust.

(2) To enter into contracts to carry out the Trust.

(3) To compromise and settle claims and to defend any actions at law or in equity against the Trust or against the Trustees.

(4) To manage and administer the Plan, to determine the rights of all participants under the Plan, and to take such action as may be necessary to make such determinations, and to make such payments as the Plan requires; and to specify the requisite form for application for a pension or for a refund of contributions.

(5) To receive and collect contributions due the Trust and to have exclusive management and control over the Trust Fund and all of the property of the Trust, including the power to invest and re-invest the principal and income of the Trust. The Trustees may in their discretion keep such portion of the Trust Fund in a checking account as the Trustees may from time to time estimate to cover payments from the Trust Fund in any six (6) month period. The Trustees shall invest the funds of the Trust in such insured savings accounts or such securities as they may determine, except the Employers' securities, provided any such investment meets the requisites from time to time established by the Internal Revenue Service.

(6) To do all acts which the Trustees may deem necessary or advisable for the protection of the property held hereunder.

(7) To propose amendments to the Plan or Trust for approval by the Union and the Employer.

(8) To do all acts which the Trustees may deem necessary or advisable to accomplish the general objective of the Trust in the most efficient and economical manner.

b. Compensation

(1) No Trustee shall be entitled to compensation for his services. Subject to unanimous approval of a meeting of the Trustees, a Trustee may be reimbursed for any necessary personal expenses incurred in connection with the administration of the affairs of this Trust.

(2) A Trustee shall be reimbursed for the cost of defending any action or claim brought against him in the

-4-

capacity of a Trustee, unless it shall be adjudged in such action that the Trustee is liable for wilful misconduct.

c. Liability

(1) Neither the Trustees nor any individual Trustee shall be personally answerable or personally liable for any obligations, liabilities or debts of the Trust or for the non-fulfillment of contracts, but the same shall be payable only by the Trust; provided, however, that nothing herein shall exempt any Trustee from liability arising out of his own wilful misconduct.

(2) The Trustees shall be fully protected in relying and acting upon the opinion of legal counsel for the Trust in connection with any matter pertaining to the administration or execution of the Trust.

(3) Neither the Union nor any Employer shall be liable in any way or in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively, or for any of the obligations or liabilities of the Trust.

d. Records and Accounts

(1) The Trustees shall cause to be kept true and accurate books of account and records of all income and expenditures, and all other transactions involving the financial condition of the Trust, which books shall be audited not less frequently than once a year by competent auditors selected by the Trustees. A copy of such audit shall be furnished to each Trustee and to the Union and the Employers. A copy of such audit shall be kept at the principal office of the Trustees available at all times for inspection.

(2) The Trustees shall deposit all monies received by them in such banks or trust companies as they may designate. All withdrawals or payments shall be made only by checks signed by the Secretary, by the Treasurer, and by one other Trustee.

e. Bonding

The Secretary and the Treasurer shall be bonded by a duly authorized surety company in such amount as may be determined from time to time by the Trustees. The cost of the premium on such bonds shall be paid by the Trust. Except where a Trustee acts as Secretary or Treasurer, no Trustee shall be required to post a bond.

f. Trust Amendments

The Trustees shall have the power to make, adopt, amend and repeal rules and regulations pertaining to the administration of the Trust hereby created as they may deem necessary or proper to carry out the provisions of this Agreement or Plan. Such rules and regulations shall be binding upon all persons dealing with the Trust. Should any such rule or regulation conflict with any agreement entered into between the Union and the Employer or with this Trust Agreement, the provision of the Union-Employer and of this Trust Agreement shall in all cases control.

-5-

g. **Power of Individual Trustee**

It is recognized that the Trustees, or some of them, and the Secretary may, in their personal capacities, have a contingent interest in the benefits provided by this Trust. Such interest shall in no way be construed to the detriment of such persons or to affect their power and authority hereunder.

h. **Appointment of Secretary**

The Trustees shall appoint a Secretary, who may or may not be a participant, whose principal duty shall be to keep the records and books of account, to process applications for pensions, to see to it that all duly approved pensions are paid, and who shall perform such other duties as the Trustees may require for the proper administration of the Trust. The Secretary shall serve at the pleasure of the Trustees.

Section 7. **Trustees, Officers and Meetings**

a. The Trustees shall elect from among them a Chairman and a Treasurer who shall each be removable at any time by a majority vote of the Trustees present and voting at any meeting of the Trustees.

b. Prior to December 1, 1965, the Trustees shall meet semi-annually at the office of the Trust. Beginning December 1, 1965, the Trustees shall meet monthly at the office of the Trust. The Trustees shall also meet on such other occasions as any three (3) of the Trustees may request in writing upon five (5) days' notice to each of the Trustees.

c. The Trustees shall keep minutes of their meetings, but such minutes need not be verbatim. Copies of such minutes shall be furnished to each of the Trustees.

d. The Trustees may vote only in person.

e. At all meetings of the Trustees, a majority of the Trustees shall constitute a quorum for the transaction of business, including the making of decisions as Administrators and Managers of the Plan, provided there are present at least two (2) Trustees who have been designated by the Employer and two (2) Trustees who have been designated by the Union present in person at the meeting. At all meetings, the Trustees designated by the Employer and the Trustees designated by the Union shall have equal voting strength. If at any meetings there shall be present an unequal number of Trustees designated by the Employer and Trustees designated by the Union, then the group (Employer or Union) having the lesser number of Trustees present shall have the same total number of votes as there are present Trustees of the other group, thereby increasing proportionately the vote of each Trustee of the group which has the lesser number of Trustees present.

f. Should the Trustees be unable to transact the business of the Trust at two (2) successive meetings because of the absence of a quorum, then each Trustee absent from the second

-6-

Chairman of the Local Transit Industry in New York City shall have the power, at the written request either of the Union or of the Employers, on five (5) days' written notice to the other of such request, to appoint a successor Trustee who shall be deemed to be the appointee of the party which had appointed the resigned Trustee and who shall not be subject to removal except by the Impartial Chairman for good cause shown and, if so removed, his successors shall be appointed by the Impartial Chairman.

Section 8. Deadlock Vote

In the event of a deadlock upon any question coming before the Trustees for decision or resolution, then on the written request of any two Trustees, the matter or dispute shall be submitted for decision to a special meeting of the Trustees to be held at a time and place fixed, upon five (5) days' notice, by the Impartial Chairman of the Local Private Transit Industry in New York City. Said Impartial Chairman shall preside at such special meeting and shall, for the purpose of deciding the matter or dispute, be vested with the full voting powers of a Trustee.

Section 9. Claims against Trust

a. No employee or participant, nor any person claiming by or through such employee or participant, shall have any claim against the Union or against an Employer under or by virtue of this Trust Agreement.

b. No participant or employee, nor any person claiming by or through such participant or employee, shall have any claim or right, title or interest, in or to the Trust, or any property of the Trust, or any part thereof, beyond the extent of the total of such person's contributions to the Trust, except such interest or claim as may accrue upon the approval by the Trustees of a participant's application for benefits pursuant to and in accordance with the provisions of this Trust Agreement and upon compliance with the rules and regulations duly adopted by the Trustees and with all other relevant provisions of this Trust Agreement.

Section 10. Amendments

a. No amendment may be adopted which will alter the basic principles of this Trust Agreement or the basic purposes of the Trust, or which will be in conflict with the then collective bargaining agreements between the Union and the Employers, or which will be contrary to the laws governing trusts of this nature or which will adversely affect the right of an Employer to deduct contributions to the Trust as a business expense under the Internal Revenue Code or under State tax laws imposing a tax on net income. No amendment shall divert or permit the diversion of the assets of the Trust, or any portion thereof, from the purposes of this Trust.

b. In the event that the Union and a majority of the Employers and a majority of the Trustees adopt, in writing, the opinion of a recognized actuary that the assets and projected income of the Trust are inadequate to meet the future cost of

-7-

pension benefits provided herein, such benefits shall be equitably reduced or otherwise modified so as to provide the maximum benefits such actuary deems to be available and payable from such assets and projected income.

c. No reduction of benefits shall affect those who have already been retired pursuant hereto and drawing benefits hereunder.

Section 11. Termination of Trust

a. Although Employers' contributions to the Fund shall be irrevocable, this Trust Agreement may terminate when there is no longer in force any collective bargaining agreement requiring any Employer contributions to the Fund.

b. In the event of termination, the Trustees shall apply the assets of the Fund first to pay all the obligations in connection with administering the affairs of the Fund and then for the payment of pensions to participating employees, and shall thereafter distribute and apply any remaining surplus as will, in their opinion, best carry out the purposes of the Plan.

c. Termination of contributions by less than all of the Employers shall not terminate this Trust Agreement or the Plan to be adopted hereunder, and the remaining Trustees shall continue to administer the Fund in accordance with the provisions of this Trust Agreement.

d. The foregoing provisions shall not be construed as permitting the Fund or any part thereof, at any time prior to the satisfaction of all liabilities with respect to employees under the Fund, to be used for, or diverted to, purposes other than for the exclusive benefit of the employees of the Employers; nor shall such provisions permit a method of distribution in conflict with the Internal Revenue Code or with the regulations issued thereunder.

e. Upon the termination of the Trust, the Trustees shall notify forthwith each Employer and the Union. The Trustees shall continue as Trustees for the purpose of dissolution and winding up the affairs of the Fund.

Section 12. Miscellaneous

a. The situs of the Trust shall be in New York City.

b. Each Employer shall promptly furnish to the Trustees, on demand, all information relating to his employees which may be required by the Trustees for the purpose of administering the Plan and the Fund. The Trustees may examine the books and records of any Employer whenever such examination is deemed necessary to the proper administration of the Plan and Fund to be created hereunder, provided however that all medical reports and records pertaining to participants shall be treated as confidential. In the event that an Employer should file written objection to an examination of his books and records by the Trustees designated by the Union, the Union shall have the right to designate an accountant to make such examination, and the Employer shall be required to permit such examination by such

-8-

accountant. Any such examination of an Employer's books and records shall be limited to matters pertinent to the administration of the Trust and the Plan.

 c. The address of each original Trustee shall be set forth on the signature page hereof; the address of each successor Trustee shall be filed in the office of the Secretary and shall be available to all interested persons.

 d. The office of the Secretary shall be the office of the Trust, and shall be located at 210 West 50th Street, New York City, or at such other place as the Trustees may determine.

Section 13. <u>Statement of Trust Fund Status</u>

 Not later than the tenth (10th) of each month, the Secretary shall mail to each Trustee, to each Employer, and to the Union, a statement on the operations of the Trust for the month immediately preceding. This statement shall show:

 (1) The total assets of the Trust and a detailed description of their deposit or investment.

 (2) The amount contributed to the Trust by each Employer during the month.

 (3) On and after January 1, 1966, the name of each pensioner receiving benefits and the amount paid him during the preceding month.

 (4) An itemization of the expenses paid during the month.

 (5) The number of pension claims pending at the end of the month, and such other information as the Trustees may require.

Section 14. <u>New York Law Applicable</u>

 This Trust Agreement shall be deemed to have been executed and delivered in the State of New York, and shall be construed and enforced according to the laws of the State of New York, and all provisions hereof shall be administered according to the laws of such State.

 IN WITNESS WHEREOF, the parties hereto have hereunto affixed their hands and seals the day and year first above written.

        QUEENS TRANSIT CORP.

        By: _/s/ Murray M. Schleien_

        STEINWAY TRANSIT CORP.

        By: _/s/ Murray M. Schleien_

-9-

TRIBORO COACH CORP.

By: /s/ [signature] Pres

JAMAICA BUSES, INC.

By: /s/ Saul Hershenhort

AVENUE B & EAST BROADWAY TRANSIT CORP.

By: /s/ Jacob Groenberg Pres

LOCAL 100, TRANSPORT WORKERS UNION
OF AMERICA, AFL-CIO

By: /s/ Daniel Gilmartin

TRANSPORT WORKERS UNION OF AMERICA,
AFL-CIO

By: /s/ Matthew Guinan

We, the Trustees hereby designated
under this Agreement, hereby accept
such designation.

| Signature | Address |
|---|---|
| /s/ [signature] | 176-68 80th Rd, Jamaica 32 |
| /s/ [signature] | 235 Chrystie, N.Y.C. 2 |
| /s/ [signature] | 80 Pelham Road, New Rochelle, N.Y. |
| /s/ Paul Rotti | 1094 New York Ave Bklyn 3, N.Y. |
| /s/ Ralph [ ] | 204 Green Valley Rd East Meadow |
| /s/ Christopher [ ] | 146-24 Elm Ave Flushing 55 |
| /s/ [signature] | 1008 [ ] Ave Westbury L.I. |
| /s/ [signature] | √202 72 St. Maspeth 78, N.Y.C. |
| /s/ Harold Hershenhort | 407 Littleworth Lane Sea Cliff N.Y. |
| /s/ Morris H Iverson | 300 Trenor Drive New Rochelle N.Y. |

-10-

<u>VERIFICATION</u>

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF NEW YORK )

WALTER N. KAUFMAN, being duly sworn, deposes and says that he is an attorney associated with O'Donnell & Schwartz, General Counsel for the Transport Workers Union of America, AFL-CIO; that he has compared the original of the Pension Trust Agreement of November 21, 1963 between said Union and the New York City Private Bus Lines with the foregoing copy of said Agreement; and that the foregoing copy is correct and complete.

_____

Sworn to before me this 9th
day of December, 1963.

_____

MICHAEL KLEIN
Notary Public, State of New York
No. 41-7295450
Qualified in Queens County
Term Expires March 30, 1964

-11-