UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOCAL 100, TRANSPORT WORKERS UNION,
AFL-CIO; ROGER TOUSSAINT, as President of
Local 100, Transport Workers Union, AFL-CIO;
and WAYNE BRYAN

          Plaintiffs,    06 Civ. 4787 (RPP)

  - against -

               **OPINION AND ORDER**

BERNARD ROSEN, MARGARET CONNOR,
MARK PAGE, MARGE HENNING and
SUSAN KUPFERMAN, as Employer
Trustees of the T.W.U. – New York City
Private Bus Lines Pension Trust,

          Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

This is a Motion for a Preliminary Injunction brought by Plaintiffs, Local 100, Transport Union, AFL-CIO ("Local 100/the Union"), Roger Toussaint, as President of Local 100, and Wayne Bryan against Defendants, Bernard Rosen, Margaret Connor, Mark Page, Marge Henning and Susan Kupferman, as Employer Trustees of the T.W.U. – New York City Private Bus Lines Pension Trust ("Employer Trustees").[1] For the reasons that follow, Plaintiffs' motion is denied.

## BACKGROUND

### A. Factual Background

In or around 1963 several private bus companies operating in New York City and Local 100, which represented certain employees of those companies, established the

---

[1] As of the most recent filing, Mark Page and Marjorie Henning were no longer serving as Employer Trustees, having been replaced by Vinay Dayal and Helene Fromm. (Def. Supplemental Mem. of Law in Opp'n to Pl. Order to Show Cause for Prelim. Inj. and T.R.O., dated June 25, 2007 ("Def. Suppl. Mem."), at 1 n.1.)

T.W.U. – New York City Private Bus Lines Pension Trust ("the Trust") through a collective bargaining agreement. The first Trust Agreement was dated November 23, 1963, and was signed by the Union, the employers and the then-serving trustees. (See Declaration of Ed Watt, dated June 21, 2006 ("Watt Decl.") ¶ 3; Pls. Supplemental Repl. Mem. of Law, dated July 3 ("Pl. Suppl. Repl.") Ex. A. (Trust Agreement).) The Trust Agreement has been amended twice: first in 1976 and then in 1999. (Id.)

The trust is governed by ten trustees who manage the trusts assets pursuant to the Trust Agreement and the requirements of the Employee Retirement Income Security Act ("ERISA"). Pursuant to the Labor Management Relations Act ("LMRA") § 302(c)(5), 29 U.S.C. § 186(c)(5), five of the trustees are designated by the Union ("Union Trustees") and five are designated by the employers ("Employer Trustees") who were parties to collective bargaining agreements with the Union as of its most recently executed trust agreement. (See Pl. Mem. of Law in Supp. of. Mot. for a Prelim. Inj. ("Pl. Mem."), dated June 21, 2006 at 3.)[2]

Until the Manhattan Transit Authority ("MTA") took over the private bus lines in 2005 and 2006, the Trust maintained two plans ("the Plans"), a pension plan and a 401(k) plan. (See id. at 2.) Pursuant to collective bargaining agreements, the employer bus companies made contributions to the Trust. In 2004, the MTA was given control over the bus routes operated by seven private bus companies, including the three employers associated with the Trust. (See Affidavit of Scott Gold ("Gold Aff."), dated June 27, 2006 ¶ 2.) Subsequently, the MTA acquired all of the assets of the three employers

---

[2] "The Trust, as required by Section 302(c)(5) . . . is administered by a board of trustees composed of an equal number of trustees appointed by the Union and by the contributing employers to the Trust."

2

associated with the trust.³  As a result, pursuant to Section 4041A of ERISA, 29 U.S.C. § 1341a,⁴ the employers no longer contribute to the Pension Plan.  (Id. ¶ 16.)

On January 30, 2006, the Employer Trustees resigned and the current Defendants were appointed in their stead.  (Watt Decl. ¶ 12.)  On March 2, 2006, the Defendants made a motion to effectuate a merger of the Trust's Pension Plan into the MTA Defined Benefit Plan ("the MTA plan").  (Gold Aff. ¶ 18; Ex. D (Proposed Resolution) at 1.)⁵  They circulated the following resolutions:

> [T]hat the merger of the Plan into the MTA plan pursuant to an Agreement in substantially the form attached hereto is approved.
> [T]hat the Trustees shall execute such Agreement in substantially the form attached hereto, subject only to such non-substantive changes as may be determined by them to be necessary or desirable to facilitate such merger . . . .
> [T]hat the proper officers, employees and administrators of the Plan are authorized and directed to take any such actions as are necessary or desirable to effect the merger and the intent of the foregoing resolutions.

(Id. Ex. D at 2-3.)  All five Employer Trustees voted in favor of the merger, all five Union Trustees voted against the merger.  (See Aff. of [Employer Trustee] Mark Page, dated June 27, 2006 ¶ 4.)⁶  According to Mr. Page, who "moved the Resolutions to merge the Fund," (id.), the Union Trustees moved to "table the motion for merger of the Fund." (Id. ¶ 5.)  Presumably, the Employer Trustees voted against tabling the motion,⁷ since, according to Defendants, "the Union Trustees first initiated the deadlock rules from

---

³ (See Gold Aff. ¶¶ 14-15 ("On February 27, 2005, New York City purchased the assets of QSC [Queens Surface Transport] . . . .  On January 30, 2006, New York City acquired the assets of Jamaica [Jamaica Busses, Inc.], and on February 20, 2006, the City acquired Triboro's [Triboro Coach Corp.] assets.")
⁴ "Termination of a multiemployer plan under this section occurs as a result of-- . . . (2) the withdrawal of every employer from the plan . . . ."  29 U.S.C. § 1341a(2).
⁵ According to Defendants, the plan to merge had been under discussion since August, 2004.  (Gold Aff. ¶ 18.)
⁶ At the same meeting, all ten Trustees agreed to terminate the 401(k) plan.  (Id. Ex. G (Termination Agreement).)
⁷ Neither party specifically addresses the vote, but the arbitration provision is only invoked if the Trustees are deadlocked.  See infra n.7.

3

Section 3.7(5) of the Trust Agreement and demanded arbitration to decide the deadlock of their motion to table motion on the Merger." (Gold Aff. ¶ 19.)[8]

On March 3, 2006, Mark E. Brossman, attorney for the Employer Trustees, sent a letter to Jacquelin F. Drucker, Esq., informing her that "[a]t the March 2, 2006 meeting of the Board of Trustees . . . the Employer Trustees and the Union Trustees deadlocked on the Employer Trustees' motion to merge the Fund with the MTA Defined Benefit Pension Plan" and that "[p]ursuant to the Trust's procedures, you have been jointly selected as an arbitrator of Trustee deadlocks."  (Id. Ex. F (Letter from Mark E. Brossman, dated March 3, 2006).)  Two days of arbitration hearings were held on May 15 and June 23, 2006.  No further hearings have been held, but, according to Defendants, "[a]t present, the final two days of the deadlock arbitration hearing are scheduled for July 24 and 27, 2007. (Def. Suppl. Mem. at 1 n.3.)

### B.  Procedural Background

On June 21, 2006, Plaintiffs brought an action for a declaratory judgment that the deadlock arbitration commenced by Defendants violates LMRA and ERISA, and for an injunction permanently barring Defendants from continuing with the arbitration. Plaintiffs also moved for a preliminary injunction and temporary restraining order to prevent the arbitration from continuing.  Defendants filed opposition papers on June 27,

---

[8] Plaintiffs do not mention either the motion to table or the fact that the Union Trustees were the first to invoke the arbitration provision of the Trust Agreement. However, they did not dispute this characterization of events in either of the two oral arguments before the Court or in their reply papers. Article 3.75 of the Second Restated Trust Agreement ("Trust Agreement") states that:
> The Trustees shall be governed by the following procedures: . . . (5) In the event of a deadlock upon any question coming before the Trustees for decision or resolution, then on the written request of any two (2) Trustees, the matter or dispute shall be submitted for decision to the Impartial Chairman of the Local Private Transit Industry in New York City.  Said Impartial Chairman shall, for the purpose of deciding the matter or dispute, be vested with full voting powers of a Trustee.

(Compl., dated June 21, 2006, Ex. A at 7.)

4

2006.  On June 28, 2006, an argument was held.  At the close of argument, the Court told Plaintiffs that, on the papers before it, they did not have grounds for a preliminary injunction.  (See Transcript, dated June 28, 2006 ("6/28 Tr.") at 41.)  However, the Court granted Plaintiffs' request to file reply papers.  (Id.)  Plaintiffs then requested that the motion be put on the Court's suspense docket, pending settlement discussions.  (See Letter from Judith Broach Esq., dated December 28, 2006.)  On April 19, 2007, after receiving notice that the settlement discussion had not been fruitful, the Court ordered Plaintiffs to file their reply papers.  On April 20, 2007 the Court held a second hearing at which the parties addressed the issues raised in Plaintiffs' reply brief.  On June 14, 2007, the Court requested supplemental briefing from Defendants, which was provided on June 25, 2007.  Plaintiffs filed a response letter on July 2, 2007.

## DISCUSSION

### A. Jurisdiction

Before the Court can decide the merits of Plaintiffs' claims, it must address Defendants' assertion that it does not have jurisdiction over the claims of Local 100 and its President, Roger Toussaint.  See Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996) ("[Courts] must address jurisdictional questions before reaching the merits."); (Def. Opp'n Mem. at 7.)  "[T]he plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Hamm v. U.S., 483 F.3d 135, 137 (2d Cir. 2007) (quoting Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002)).  In their complaint, Plaintiffs Local 100 and Roger Toussaint invoke jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, the LMRA § 302(e) and federal question jurisdiction under 28 U.S.C. § 1331.

5

(See Compl. ¶ 2.) Initially, Plaintiffs did not address the question of jurisdiction beyond invoking the aforementioned statutes in the jurisdiction section of their complaint. Then, at oral argument on June 28, 2006, Judith Broach, Esq., counsel for Plaintiffs, stated that "We are not alleging that there is a 302(c)(5) structural defect . . . . We are saying that there is a 301 breach of contract." (Transcript, dated June 28, 2006 ("6/28 Tr.") at 9.) In their reply papers, Plaintiffs only addressed jurisdiction under §302(e), and it was unclear whether they had abandoned their claim to jurisdiction under §301. After the Court requested supplemental briefing on the issue of jurisdiction under §301, however, Plaintiffs addressed the Court's jurisdiction under §301 in a supplemental brief. (See Pl. Suppl. Repl.)

Defendants allege that the Court does not have jurisdiction under §§ 301 or 302(e) of the LMRA, 29 U.S.C. §§ 185, 186(e), and that though the Court has federal question jurisdiction under 28 § 1331 and § 502(a) of ERISA, 29 U.S.C. § 1132(a), over claims by Plaintiff, Wayne Bryan, Plaintiffs Local 100 and Roger Toussaint do not have standing to sue under that section of ERISA.

**1. Jurisdiction Pursuant to § 502(a)**

Section 502(a) of ERISA provides in relevant part: "[a] civil action may be brought -- (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. 1132(a). Plaintiffs only invoke §502(a) in conjunction with Wayne Bryan's claims. Defendants do not dispute that the Court has jurisdiction over Mr. Bryan's claim under this section of

6

ERISA.[9] As a beneficiary of the Trust, Mr. Bryan can bring suit in federal court against the Trustees for breach of their fiduciary duty. However, Defendants correctly assert that Plaintiffs, Local 100 and Toussaint, do not have standing under this statute. See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case. A suit for similar relief by some other party does not 'arise under' that provision.").[10] Thus §502(a) secures the Court's jurisdiction as to Mr. Bryan's claims, but not as to the claims of Local 100 or its president.

### 2. Jurisdiction Under LMRA § 301

At oral argument on June 28, 2006, Plaintiffs' counsel made an oblique reference to the Court's jurisdiction under §301(a) of the LMRA, 29 U.S.C. §185(a),[11] which provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

---

[9] (See Def. Mem. at 12 ("[T]he only federal question that is arguably at issue is the proper interpretation of a document governing an ERISA plan. ERISA § 502(a), 29 U.S.C. 1132(a) . . . .").)

[10] In fact, Local 100 has had its claims dismissed for lack of standing under ERISA in this district. See Toussaint v. JJ Weiser & Co., 2005 WL 356834, at *6 (S.D.N.Y., Feb. 13, 2005) (" Local 100 is not a participant as defined by ERISA, because it is not an employee, former employee, member, or former member of an employee organization with eligibility to receive benefits.").

[11] Disavowing its claim to jurisdiction under §302(e), counsel instead claimed that "there is a 301 breach of contract[] [a]nd going all the way back to the Schneider Moving and Storage case in the Supreme Court, 1984, the Court has recognized that there is a 301 breach of contract claim for violation of plan documents." (6/28 Tr. at 9.)

7

Id. "In order to sustain jurisdiction over an action under Section 301, the action must allege: (1) a violation (2) of a contract (3) between an employer and a labor organization or between two labor organizations." Smith v. Hickey, 482 F. Supp. 644, 646-47 (D.C.N.Y. 1979).

The contract at issue here, The Second Restated Trust Agreement (Gold Aff. Ex. A), amended and restated the original Trust Agreement, which was signed by Local 100, the employers, and the trustees. (See Pl. Suppl. Repl. Ex. A (original Trust Agreement).)[12] Thus, not only is there a contract between an employer and a labor organization, but it is also one to which the defendants are signatories. [13]

In Schneider Moving and Storage, 466 U.S. 364 (1984), the Supreme Court stated in a footnote that "[s]ection 301(a) of the LMRA provides a federal forum for suits to enforce labor contracts, including pension and welfare fund agreements." Id. at 366 n.2. Defendants allege that the language in Schneider is not applicable to this case because the contract at issue here, the Trust Agreement, is "not a labor contract." (Def. Suppl. Mem. at 4.) However, they cite no cases to support this position. In fact, the Second Circuit has held that these documents constitute labor contracts for § 301 purposes. See Whelan v. Colgan, 602 F.2d 1060, 1061 (2d Cir. 1979) ("The District Court properly took jurisdiction under s 301 of the Labor Management Relations Act, 29 U.S.C. s 185,

---

[12] Defendants urge the Court to ignore the original Trust Agreement, which Plaintiffs attach as Exhibit A to their Reply to Defendants' Supplemental Briefing. (See Letter from Scott Gold, dated July 3, 2007.) They note that Plaintiffs have had several submissions and over a year to bring this document to the attention of the Court. However, the Court requested briefing on this issue and declines to ignore a document that is central to its jurisdiction.

[13] Defendants cite two cases from the Second Circuit for the proposition that §301 does not apply here because the Employer Trustees were not party to the collective bargaining agreement. (See Def. Suppl. Mem. at 3 (quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Construction Corp., 2007 WL 526621 (E.D.N.Y. February 13, 2007); Duane Reade v. Allied Trade Council, 2005 WL 3038645 (S.D.N.Y. October 7, 2005).) However, in these cases the lack of jurisdiction was premised on the fact that the trustees at issue were not signatories to the contract that they were being sued over. This case is readily distinguishable because the trustees are signatories to the original and Second Restated Trust Agreements.

because the employee trustees' claim for relief was founded upon their interpretation of the Welfare Fund Trust Agreement between the Union and the employers."). Courts in other jurisdictions have uniformly held the same. See Garvey v. Roberts, 203 F.3d 580, 587 (9th Cir. 2000) ("We have emphasized that 'contracts' upon which section 301 suits may be brought are not limited to collective bargaining agreements."); Carpenters Dist. Council of Kan. City Pension Fund v. Bowlus Sch. Supply, Inc., 716 F. Supp. 1232, 1235 -36 (W.D. Mo. 1989); Int'l Union of Bricklayers and Allied Craftsmen, Local No. 1 of R.I. v. Menard & Co. Masonry Bldg. Contractors, 619 F. Supp. 1457, 1462 (D.R.I. 1985); Maita v. Killeen, 465 F. Supp. 471, 472-73 (D.C.Pa. 1979) ("It seems logical that an agreement which sets employers' payments to a pension fund means to include the pension plan as part of the bundle of rights labeled a contract for purposes of section 301.").

Though the action in this case is between the Union and the Employer Trustees, § 301 requires that the *contract* be between an employer and a labor organization, not that the lawsuit be between these groups: "[i]t is well settled that parties in a § 301 action do not necessarily have to be employers or labor organizations. The word 'between' in § 301(a) refers to 'contracts' between an employer and a labor organization, not to 'suits' between them." Painting and Decorating Contractors Ass'n of Sacramento, Inc. v. Painters and Decorators Joint Comm. of East Bay Counties, Inc., 707 F.2d 1067, 1069 (9th Cir. 1983) (citing Smith v. Evening News Ass'n, 71 U.S. 195, 200 (1962) (holding that an employee, who is not a signatory to a collective bargaining agreement, can bring an action under § 301)); see also Able Bldg. Maint. Co. v. Bd. of Trs. of Gen. Employees Trust Fund, 2003 WL 22749151, *4-5 (N.D. Cal. 2003) (affirming federal jurisdiction

9

under §301 where employer plaintiff sued trustee defendants where "the Trust Agreement . . . is a contract between an employer and labor organizations representing employees in an industry affecting commerce . . . . As such, plaintiff's breach of contract claim falls within the meaning of Section 301 of the LMRA.").

As for the alleged breach of contract, Plaintiffs have not clearly articulated the specific provision of the contract breached by the Employer Trustees' actions. If, however, engaging in arbitration over the merger proposal is an ultra vires act, as Plaintiffs claim, (Pl. Repl. at 8), then the Employer Trustees have violated the final provision in the Trust Agreement, which states that "in no event shall the funds and the Plans be used for any purpose other than the purposes herein set forth." (See Compl. Ex. A ¶ 11.1.) Thus, the Court has jurisdiction over the claims of Local 100 and its president, Roger Toussaint, under LMRA §301.[14]

**B. Preliminary Injunction**

In order to get a preliminary injunction "[i]n this Circuit . . . the requesting party must demonstrate: (1) irreparable harm; and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." LaForest v. Former Clean Air Holding Co., Inc. 376 F.3d 48, 54 (2d Cir. 2004).

**1. Irreparable Harm**

The Second Circuit has held that "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. . . . Accordingly, the moving

---

[14] Because the Court has jurisdiction under § 301, there is no need to address the issue of jurisdiction under §302(e).

party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." <u>Rodriguez ex rel. Rodriguez v. DeBuono</u>, 175 F.3d 227, 234 (2d Cir. 1999) (internal citations and quotations omitted). Plaintiffs claim that if the Court allows the arbitration to proceed Local 100 and its members will be irreparably harmed in the following ways: (1) "the Trust, which provides benefits to [Union members] would be required to expend time and resources arbitrating an issue which . . . cannot be arbitrated and for which an award is not enforceable"; (2) "an arbitrator's decision that the plans should merge would usurp the Union's authority as collective bargaining agent, to bargain over the ultimate disposition of the Trust and its assets [which] cannot be cured by money damages"; (3) if the plan is "merged with the MTA Plan which is administered exclusively by the MTA . . . [t]he union's ability to appoint some of the individuals who control plan assets would be eliminated" and "the participants in the Trust . . . will be deprived of the benefit of having one half of the trustees . . . appointed by the union"; (4) "if the merger were to be approved, the participants in the Trust's plan would no longer be afforded the protection of ERISA, including its funding, vesting and fiduciary protections because the MTA plan is not covered by ERISA."  (Pl. Mem. at 6-7; Pl. Repl. Mem. at 8.)

> **i.     Allowing the arbitration to go forward will not affect Plaintiffs' claims two, three and four.**

Claims two, three and four are simply too speculative to be considered on a motion for a preliminary injunction; all three claims relate to harm stemming from the merger itself, not the process of arbitration.  As Defendants point out, "the Arbitrator might rule against the Merger.  Such a ruling would obviate [most] of Plaintiff[s'] concerns."  (Def. Mem. at 13.)  Plaintiffs' claims of harm all relate to a speculative *result*

11

of arbitration. Should the Arbitrator decide in favor of the Employer Trustees, Plaintiffs will have time to petition the Court for a preliminary injunction at a stage where their claims of harm are more immediate.

### ii. Funds Expended by the Trust on Arbitration

The first claim, however, does deal with harm caused directly by the process of arbitration itself: if the Trustees spend money arbitrating an issue that is later determined to be outside the powers of the Trustees, the money spent will have been wasted.[15] This affects the beneficiaries of the Trust, and is thus relevant to Plaintiffs' claims for breach of contract and breach of fiduciary duty.

Plaintiffs cite Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979 (2d Cir. 1997), in which the Second Circuit upheld a district court's grant of a preliminary injunction to stop an arbitration where, among other injuries, "Maryland would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." Id. at 985. However, in Maryland, the trust agreement in dispute "contain[ed] an express limitation to the scope of the arbitration clause," id. at 983, which, the court found, rendered the issue proposed for arbitration non-arbitrable.

In this case, there is no provision in the Trust Agreement excluding the issue of merger from arbitration. Instead, the agreement provides that "[i]n the event of a deadlock upon any question coming before the Trustees for decision or resolution . . . the matter or dispute shall be submitted for [arbitration]." (Trust Agreement §3.7(5).) Thus,

---

[15] It is a bit ironic that Plaintiffs make this claim, given that the Trust has already been forced to spend large sums on the current litigation, as the Court pointed out in oral argument a year ago. (See 6/28 Tr. at 9 ("Why does the union feel that they want to dispute this when their trustees have agreed to an arbitration? And why are they coming in here to create costs for the trust, to the loss of the employees who are the sole beneficiaries of the trust?").)

12

Maryland is not applicable here. See Vittoria Corp. v. N.Y. Hotel and Motel Trades Council, AFL-CIO, 30 F. Supp. 2d 431, 437-38 (S.D.N.Y. 1998) ("In [Maryland], the issue was clearly not arbitrable because the arbitration clause expressly excluded the parties being compelled to arbitrate. There is no such exclusion in [the agreement at issue in this case], and thus *Maryland* is not controlling." (internal citation omitted)).

Plaintiffs press the issue by arguing that the Court should enjoin arbitration because the Agreement does not specifically *permit* arbitration about a merger. Plaintiffs rely in large part on Bueno v. Gill, 2002 WL 31106342 (S.D.N.Y. September 20, 2002), in which Judge Cote entered a preliminary injunction preventing arbitration of a spin-off proposal. In that case, the court was called on to decide whether a proposal to spin off the part of a pension plan that benefited non-collectively bargained for employees of Group Health Insurance, Inc. was arbitrable according to the funds trust agreement. Id. at *1. Similar to the facts at issue in this case, the trustees had deadlocked over the proposal. The arbitration provision at issue in Bueno provided for arbitration "[w]henever the Trustees are unable to reach a decision as to a proposed course of action." Id. at *4. The arbitration provision in Bueno is narrower on its face than the arbitration provision in the Trust Agreement in this case, which calls for arbitration of "*any* question coming before the trustees." What constitutes a "proposed course of action" is more limiting, by its language, than "*any* question coming before the Trustees."

Moreover, at the time the injunction was entered, Judge Cote was mistakenly informed that the Bueno trust agreement contained a clause that forbade "the use of arbitration 'to change or modify the basic provisions' of the Trust Agreement." Id. Relying on this information, she stated that "the proposal cannot be submitted to

13

arbitration since it would require a change and modification of basic provisions of the Trust Agreement, and thus is unquestionably beyond the scope of issues that the Trust Agreement permits to be resolved by arbitration." Id. In a later opinion on a motion for reconsideration, Judge Cote noted that the court had been informed that the provision had been deleted from the trust agreement prior to the September opinion: "[t]he Opinion and Order of September 19, 2002 relied extensively on a provision of the Trust Agreement . . . that had been deleted from the Trust Agreement by the Trustees." Bueno v. Gill, 237 F. Supp. 2d 447, 447 (S.D.N.Y. 2002). Though she denied the motion for reconsideration, it is clear that, as Judge Cote noted, her analysis in the first Bueno opinion relied heavily on a provision that clearly proscribed an arbitration that could modify the trust agreement.

Furthermore, the Supreme Court has held that a "dispute must be referred to arbitration unless it can be said with 'positive assurance' that the dispute does not fall within the scope of the arbitration clause." Bueno, 2002 WL 31106342 at *4 (citing AT&T Tech., Inc. v. Comm. Workers of Am., 475 U.S. 643, 650 (1986)); see also Barrett v. Miller, 276 F.2d 429, 433 (2d Cir. 1960) ("[A] trustee . . . need not demonstrate that his interpretation that the issue was one trustees could decide was the correct one, he must . . . establish that it is a possible one.").

Here, Defendants point to several clauses in the Trust Agreement which suggest that a merger of the now virtually defunct Pension Plan into the MTA plan is consistent with the intent of the agreement to submit deadlocked proposals to arbitration. First, the trust agreement contains a provision which allows the trustees to "terminate the plan," an option the trustees have already exercised in regards to the 401(k) plan. (See Termination Agreement, Gold Aff. Ex. G.) Though termination is certainly not the same

14

thing as a merger, the termination provision does suggest that the Trust Agreement contemplates broad decision-making power by the Trustees.

Second, Defendants point to language in the Employee Pension Plan entitled "Merger or Consolidation," which states that "[t]he Plan may be merged or consolidated with . . . another plan . . . only if each Participant would . . . receive a benefit which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger . . . ." (Gold Aff. Ex. B. (Pension Plan) § 14.15.)  Plaintiffs argue that no weight should be given to this clause in the Pension Plan because "the Trust Agreement explicitly states that it 'governs the Pension Plan,'" and because the merger clause in the Plan is "in conflict with the Trust Agreement." (Pl. Repl. Mem. at 7 (quoting Trust Agreement witnesseth ¶ 9, Compl. Ex A).)  However, as noted above, nothing in the Trust Agreement explicitly prevents a merger; it is simply silent about the power of the Trustees to effect a merger.  Furthermore, the Trust Agreement gives the Trustees the power to construe the terms of the Trust Agreement (Compl. Ex. A § 4.8(1)), and they clearly construed it to allow them to merge the Pension Plan at the time the Pension Plan document was created.  Thus, the merger clause in the Pension Plan document, while not definitive, is evidence that the Trustees may have power to merge, and thus that the question is one for an arbitration, not for a court proceeding.

Finally, two other clauses in the trust lend credence to the trustees plenary power over the plans created by the trust.  Section 11.1 gives the Trustees the power to amend the Trust Agreement (Compl. Ex. A § 11.1.).  Section 4.8(9) gives the trustees the power to "do all other acts that they consider necessary or appropriate to effectuate the purposes

15

of the Fund and the Plans subject always to the provisions of applicable law, this Trust Agreement and the Plans." (Id.)

Based on the clauses cited in the Trust Agreement and the Pension Plan document, Defendants have shown the Court that the Trustees at least arguably have the power to merge, and thus, that the issue is arbitrable. The irreparable harm found by the Second Circuit in Maryland is not applicable to this case.[16]

### 2. Success on the Merits

Since Plaintiffs have not shown irreparable harm, there is no need to analyze their possible success on the merits.

### CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Preliminary Injunction is denied.

IT IS SO ORDERED

Dated: New York, New York
July 13, 2007

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Order sent to:

Counsel for Plaintiffs:
Broach & Stulberg LLP
Attn: Judith Broach/Ira Cure

---

[16] Defendants' argument that Plaintiffs can sue for damages should it turn out that the Trustees do not have the power to merge is specious, since the Trust would be the responsible party, and it is Trust funds that Plaintiffs are concerned about wasting in futile arbitration.

16

One Penn Plaza Suite 2016
New York, NY 10119
Fax: 212-947-6010

Counsel for Defendants:
Schulte, Roth & Zabel LLP
919 Third Avenue
New York, NY 10002
Attn: Ronald Richman/Scott Gold
Fax: 212-593-5955